**SCHOOL DISTRICT OF PHILA-
DELPHIA et al.**

v.

**HARPER & ROW PUBLISHERS,
INC., et al.**

Civ. A. No. 40537.

United States District Court
E. D. Pennsylvania.

April 24, 1967.

See also D.C., 267 F.Supp. 1006.

Cohen, Shapiro, Berger & Cohen, by
David Berger, and Herbert B. Newberg,
Philadelphia, Pa., Dilworth, Paxson, Ka-

lish, Kohn & Levy, by Aaron M. Fine, and Delores Korman, Philadelphia, Pa., Edward G. Bauer, City Sol. for City of Philadelphia, Philadelphia, Pa., for plaintiffs and Intervenors.

Pepper, Hamilton & Scheetz, by J. B. H. Carter, and K. Robert Conrad, Philadelphia, Pa., for Harper & Row and Little, Brown & Co.

Duane, Morris & Heckscher by Henry T. Reath, Philadelphia, Pa., for The Macmillan Co.

Dechert, Price & Rhoads by H. Francis DeLone, and Raymond H. Midgett, Jr., Philadelphia, Pa., for McGraw-Hill Book Co.

Wolf, Block, Schorr & Solis-Cohen, by Seymour Kurland, Philadelphia, Pa., for Golden Press.

Drinker, Biddle & Reath, by Lewis H. Van Dusen, Jr., Patrick Ryan, Philadelphia, Pa., for Harcourt, Brace & World, Inc.

Schnader Harrison, Segal & Lewis, by Edward W. Mullinix, Arthur H. Kahn, Philadelphia, Pa., for Random House, Inc. and Alfred A. Knopf, Inc.

Blank, Rudenko, Klaus & Rome, by Goncer Krestal, Philadelphia, Pa., for Franklin Watts, Inc. Children's Press, Inc.

Obermayer, Rebmann, Maxwell & Hippel, by David F. Maxwell, Philadelphia, Pa., for American News Co.

White & Williams, by Michael H. Malin, Philadelphia, Pa., for Rand McNally & Co.

Rawle & Henderson, by George M. Brodhead, Philadelphia, Pa., for Campbell & Hall, Inc.

Saul, Ewing, Remig & Saul by Robert W. Sayre, Philadelphia, Pa., for G. P. Putnam Sons.

Donald Brown, Philadelphia, Pa., for Donald McKay Co., Inc.

Montgomery, McCracken, Walker & Rhoads by Joseph H. Swain, Jr. Philadelphia, Pa., for Baker & Taylor.

Theodore R. Mann, Philadelphia, Pa., and Weil, Gotshal & Manges, by Donald J. Williamson, New York City, for Henry Z. Walck, Inc.

## OPINION

KRAFT, District Judge.

On December 12, 1966, the Court *sua sponte*, directed the parties to submit briefs on the question whether this action for treble damages, brought under the antitrust laws, (15 U.S.C.A. §§ 1, 15) should be maintained as a class action under the recently amended provisions of Rule 23(a), (b) and (c).[1] Timely hear-

---

1. New Rule 23

CLASS ACTIONS

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incom-

patible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of

ing was held thereafter. Upon careful consideration of the respective contentions of the parties, we have concluded that this suit is not to be maintained as a class action.

Briefly summarized, the gist of the plaintiffs' claim is that the defendants[2] (publishers, jobbers and wholesalers) have engaged in *a national conspiracy*[3] to fix and maintain uniform, arbitrary and non-competitive prices in the sale of "library" editions of children's books to public libraries and public schools throughout the United States. Plaintiffs also claim that the defendants have restricted and limited the supply, physical qualities and the types of books available to public schools and public libraries and have required these entities to purchase books of inferior physical quality at unreasonably high and non-competitive prices.

As originally filed, the class purported to encompass " * * * all public libraries and schools, and school systems maintaining libraries * * * and other educational institutions, organized and situated throughout the United States * * *." It has been fairly estimated that such libraries and school systems aggregate 60,000 in number.

By amendment of paragraph 4 of the Complaint permitted by the Court on January 27, 1967, the *proposed* class was reduced and divided into two subclasses totaling approximately 1224 members. Subclass A (about 453 members) is composed of all public school systems in the United States with an enrollment of 12,000 students or more, as set forth in the 1964–1965 Education Directory published by the Office of Education of the United States Department of Health, Education and Welfare. Subclass B (about 871 members) consists of all states, municipal governments, governmental agencies and political subdivisions which maintain libraries for the use of the general public and all public libraries which have annual book funds in excess

the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

(c) Determination by Order Whether Class Action to be Maintained; Notice; Judgment; Actions conducted Partially as Class Actions.

(1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.

(2) In any class action maintained under subdivision (b) (3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

(3) The judgment in an action maintained as a class action under subdivision (b) (1) or (b) (2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under subdivision (b) (3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c) (2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class.

(4) When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.

2. Seventeen in number to date.

3. In contrast to the 18 individual actions, filed on April 18, 1967, by the United States, which charge separate and distinct conspiracies between each publisher and certain unnamed wholesalers.

of $10,000.[4] Presently, the class is actually composed of the three original plaintiffs (School District of Philadelphia Commonwealth of Pennsylvania and City of Philadelphia) and five intervenor plaintiffs.[5]

Recognizing that practical considerations, among others, materially affect our determination of the class issue, we are impelled to conclude that the class action device is not, in this instance, "superior" to the more conventional procedure of allowing liberal intervention under Rule 24 and permissive joinder under Rule 20.

■ Assuming, for purposes of deciding this motion, that the plaintiffs have satisfied the four criteria of Rule 23(a), we do not believe, *at this time,* that any questions of law and fact, common to all members, "predominate"[6] over questions affecting individual members.

The commodity involved in this litigation (library editions of children's books) is commercially unique. Many of the children's books, either by reason of literary content, or the number and quality of the illustrations and the types of bindings, are unquestionably both educational and artistic in character. An individual volume, bound by its publisher in a distinctive way exclusively for library use, will often have different production, service and marketing problems from a like volume offered and sold to the general retail trade in an ordinary paper wrapper. Accordingly, the economic factors, among others, involved in establishing the price in such a specialized market may depend in large part upon the volume of demand, the publisher, the cost of the reading content, the illustrations and the binding.[7]

Proof of the business relations between individual plaintiffs and individual defendants will be complex and will naturally tend to vary according to the dissimilar requirements of the respective plaintiffs for children's books and their employment of differing methods of purchase, such as, by sealed bids solicited by public notice, by bids obtained by solicitation of selected suppliers, by direct purchase from the publisher or from wholesalers or jobbers. At this juncture we are persuaded that the diverse nature of the issues affecting the interests of the individual members of the alleged class and the sundry defendants predominates over any existing common questions of law and fact.

Additional considerations which constrain us to deny the maintenance of this suit as a class action are the difficulties certain to be encountered in its management as a class action. Suit was commenced June 26, 1966. Numerous hearings, arguments and conferences have since been held on most phases of this action. More than 100 pleadings and documents have already been filed of record,[8] despite the entry of a stay of all proceedings on November 10, 1966,[9] which is now in effect.[10]

■ We are loath to impose upon the already overburdened clerical facilities of this Court the onerous task of preparing and forwarding to all the proposed mem-

---

4. Compiled from the American Library Directory (24th Ed. 1964).

5. City of Rochester (New York), Madison School District (Michigan), City of Madison Heights (Michigan), State of Michigan and City of Los Angeles (California).

6. As required by Rule 23(b) (3).

7. Affidavit of Jeremiah Kaplan, page 10. For example, the library edition version of Mark Twain's "The Adventures of Huckleberry Finn" is published by Gross & Dunlap, Inc. at $3.05, by Franklin Watts, Inc. at $4.95, by The Macmillan Company at $3.24, and by Harper & Row at $2.92.

8. Compare, with the record of a pending ten year old treble damage suit Goldlawr v. Shubert, D.C., 32 F.R.D. 467, C.A. 21506 and C.A. 22092 in which 362 documents have been docketed.

9. Pending a report on the results of the Federal Grand Jury now sitting in Chicago, Illinois, which is investigating the same matters which are the subject of this litigation.

10. Certain collateral discovery matters and issues of jurisdiction and venue have been specifically exempted from the stay.

bers of the class the notices required by new Rule 23(c) (2),[11] and the ensuing detail of the consequent record-keeping. Counsel for the plaintiffs have proposed that we delegate to counsel[12] the "ministerial" task of transmitting such notice to all members of the class. We are reluctant to embark on such a course of action, mindful of the prevailing view of the Court of Appeals in this Circuit that " * * * the proper administration of justice requires of a judge not only actual impartiality, but also the *appearance* of a detached impartiality." Rapp v. Van Dusen, 350 F.2d 806, 812 (3 Cir. 1965) (emphasis ours).

We have little doubt that our "appearance of detached impartiality" would be seriously impaired by any delegation to plaintiffs' counsel of the Court's duty to frame and serve suitable notice on all class members. Observation and long experience have taught us that the mere service of notice upon the hundreds who would be involved is far more likely to be the beginning, rather than the end, of frustrating complexities. Inquiries inevitably ensue, one upon another, which must be answered or ignored. To answer involves the Court in direct correspondence with prospective litigants in a pending case, a very questionable judicial undertaking. To ignore an inquiry, which the Court appears to have invited by a notice to a prospective litigant to "opt out" or be joined, would cast doubt and suspicion upon the judicial process.

It has been recognized by others, as well, that "The new rule poses the dilemma that despite the express disclaimer of expansion of jurisdiction in Rule 82, a literal adherence to the commands of Rule 23 would extend jurisdiction to citizens not previously within the Court's power. That is, inclusion of all members of the former spurious class in the judgment—the clear mandate of Rule 23—could be construed as changing the manner of meeting the requirements of diversity of citizenship and jurisdictional amount."[13]

Although the new rule gives us no express power to *order* a proposed member to join the class—if a proposed member, over whom we previously had no personal jurisdiction, simply *ignores* the notice, whether by intention or by inadvertence, it becomes, by inaction alone, a member of the class to be bound by the judgment. Our "invitation", thus extended, becomes, in effect, a "command". Such a radical extension by this Court's jurisdiction by the mere inaction of a non-appearing, non-resident citizen is, in our view, unprecedented.[14]

By its silence, a proposed class member not only forfeits its previously unfettered right to choose its own forum and to initiate its own litigation, but apparently waives any objections it might have concerning the lack of personal jurisdiction and venue of this Court.

We have some doubt, too, of the propriety of a rule which extends the binding, substantive effect of a judgment to absent, but "described", class members as well as to "identified" class members. Conceivably, after trial, unsuccessful antitrust defendants could find themselves liable to unidentified, but "described", class members, against whom they had had no fair opportunity to pursue pre-trial discovery, to define and refine issues in pre-trial conference or to cross-examine upon trial.

We recognize, of course, that some class actions and certain types of

---

11. Supra see note 1.

12. Presumably, "counsel" would not include the defendants' counsel, who could hardly be expected to encourage prospective plaintiffs to join in this suit.

13. Selected Essays on the New Federal Rules: Civil, Admiralty, Criminal and Proposed Appellate from the Georgetown Law Journal. Vol. 54: p. 1219 (1966).

14. Previously, any enlargement of the jurisdiction and venue powers of the district courts by Congress has been specifically conferred by statute. The Interpleader Statutes 28 U.S.C.A. §§ 1335, 1397, 2361 and the recent Habeas Corpus Amendment to 28 U.S.C.A. § 2241 are but several examples.

class action will readily and naturally meet the manifold standards of Rule 23, while in others, a premature judgment, later found erroneous, that these standards are fully met will create endless pitfalls. It is apparent to us that every doubtful case must be carefully reviewed and measured against the standards established by Rule 23 in the searching light of experience and practicality before a proper decision can be made upon the foreseeable consequences of maintenance as a class action. So reviewed and measured, we have concluded that a presently foreseeable result in permitting *this action* to be so maintained would be a myriad of complex, frustrating, needless problems in attempted management.