Reuben J. KATZ, on behalf of himself and all others similarly situated, Plaintiff,

v.

CARTE BLANCHE CORPORATION, Defendant.

Civ. A. No. 69–1326.

United States District Court, W. D. Pennsylvania.

Nov. 18, 1971.

As Amended Nov. 26, 1971.

Howard A. Specter, Litman, Litman, Harris & Specter, Pittsburgh, Pa., for plaintiff.

John H. Morgan, Eckert, Seamans & Cherin, Pittsburgh, Pa., for defendant.

OPINION ON MOTION BY PLAINTIFF FOR DETERMINATION OF CLASS ACTION

TEITELBAUM, District Judge.

This is the second and dispositive opinion in this action relative to the

plaintiff's Motion For Determination Of Class Action under Federal Rule of Civil Procedure 23. Brought representatively by Reuben Katz, formerly an authorized holder of one of the defendant, Carte Blanche Corporation's credit cards, this action seeks damages not only on behalf of Mr. Katz, but also on behalf of all those similarly situated, i. e., all those authorized holders of one of the defendant's credit cards since July 1, 1969, for what are alleged to be violations of the Truth In Lending Act [1] and Regulation Z (12 C.F.R. 226) promulgated thereunder. Specifically, the allegations surround the disclosures made (or not made) by the defendant with respect to certain "finance charges": (1) the annual membership fee which the defendant charges its cardholders, (2) the late charge which the defendant assesses its cardholders' unpaid overdue balances, and (3) the finance charge which is imposed upon unpaid balances which are outstanding pursuant to defendant's extended payment plan. The class which the plaintiff seeks to represent numbers in excess of 600,000 members.

## PREDOMINANCE AND SUPERIORITY

In Katz v. Carte Blanche Corporation, 52 F.R.D. 510 (D.C.W.D.Pa., 1971) (Katz I), we decided that the class proposed to be maintained and represented by the plaintiff in this action satisfied the prerequisites of Subsection (a) of F.R.Civ.P. 23, but withheld decision, pending further proceedings, as to the satisfaction of the provisions of Subsection (b) (3) [2] thereof. Essentially, to satisfy Subsection (b) (3) it must be found that,

> " . . . the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

We noted in Katz I that the difficulties likely to be encountered in the management of a class of the proportions of that proposed in the instant action was of crucial consideration to both of these required findings. Specifically, we found problematical the highly personalized nature of the individual question regarding the use (consumer or business) to which the defendant's credit card is put, and queried the possibility of a test case, as a superior alternative, in light of the provision of the Truth In Lending Act for recovery by a successful plaintiff of costs and reasonable attorney's fees.

Some confusion surrounded the meaning of the term test case. A classic test case with binding legal effects on all those affected by its outcome is not possible, of course, without the express consent of all those affected, both parties and non-parties. In the case *sub judice* in which the obtaining of the express consent of non-nominal parties is an impracticability, the procedural device by which to bind all non-nominal parties to the outcome of the case is the class ac-

---

1. 82 Stat. 146 et seq. (15 U.S.C.A. § 1601 et seq.)

2. "[T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

tion.[3] The term test case as applicable here, therefore, means a test case for practical purposes. In other words, if the plaintiff's motion for determination of a class action is denied the instant action becomes, in practical effect, a case not legally binding upon anyone other than Mr. Katz, and it is the superiority of that alternative which we must evaluate.

█ Sheer size of a class is not negatively determinative of the issue of the superiority of a class action. Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968). The critical determinant is that of its manageability—judicially, administratively and practically—as a class action. In Katz I we observed that the manageability inquiry is also that upon which the issue of whether or not the common issues predominate over the individual issues turns. The findings as to the manageability of at least the instant action as a class action, thus intertwines the two requirements of the provisions of Subsection (b) (3), and the core consideration evolves as whether or not the instant action is manageable as a class action in light of the individual question as to the use, consumer or business, which we originally found so problematical.

The defendant urges that the subjectivity of that question makes the class unmanageable. It urges that it would be entitled to cross-examine each member of the class[4] as to the nature of the use to which he put his Carte Blanche credit card.[5] The existence of an individual question, however, is not unique to this case. Almost all of the actions sought to be maintained as class actions under Subsection (b) (3) since the amendment of F.R.Civ.P. 23 in 1966 have alleged either securities frauds or antitrust violations. And in each of those kinds of actions individual questions are present. Our initial inquiry, then, will be for the purpose of deciding whether or not the individual questions in those kinds of actions are more manageably resolvable than the individual question which pervades this action.

In the class action cases alleging antitrust violations the individual questions of damages and membership in the class[6] have, almost universally,[7] been deemed to be not insurmountable ob-

3. Since our circuit has decided that an action proposed as a class action shall proceed as a class action unless and until it is determined otherwise, all members of the proposed class are more properly non-nominal parties than non-parties. See Kahan v. Rosenstiel, 424 F.2d 161 (3rd Cir. 1970).

4. The definition of the class (and subclasses as will be hereinafter delineated) will have to include, for purposes of notice, all authorized Carte Blanche cardholders since July 1, 1969, with a "personal" account. (Some accounts are designated "company" accounts and may readily be eliminated at the outset.) Whether or not a cardholder's account is designated "personal" in its application to the defendant, of course, has no bearing on the question of the use to which he puts his card.

5. The plaintiff argues that a consumer use under the Truth In Lending Act is any use in which the cardholder "consumes", which includes virtually *any* use by an individual, as opposed to a use by a business entity. This argument is patently ill-founded, indeed, frivolous. The determination of what is and is not a consumer use depends on the circumstances and motives surrounding the particular use to which the card is put in a given situation.

6. Membership in the class will be an individual question inevitably, and in the instant action if the class could practically be defined to include only those cardholders who used their cards for consumer uses the individual question would be tantamount to proof of membership in the class. It is only significant as an individual question when as in an antitrust case, its confirmation by the defendant is other than perfunctorily available.

7. See, *contra*, School District of Philadelphia v. Harper & Row Publishers, Inc., 267 F.Supp. 1001 (D.C.E.D.Pa., 1967).

stacles. Illustrative of the principles involved are Eisen v. Carlisle & Jacquelin, 52 F.R.D. 253 (D.C.S.D.N.Y.1971) and City of Philadelphia v. American Oil Co., 53 F.R.D. 45 (D.C.N.J., 1971). In *Eisen*, a class of potentially 6,000,000 public shareholders who had engaged in "odd-lot" transactions was determined to be manageable. Facilitating that determination was the fact that the answers to the two individual questions involved were *reasonably subject to verification* by the defendant independent of a member's mere assertion. Those facts so ascertainable were (1) the identity of a member of the class and (2) the number of "odd-lot" transactions in which a member had engaged. The court decided that if liability were established, an approximation of the aggregate damages to the class could be computed, and a claim to that aggregated amount could be asserted by members of the class and could be verified by the member's stockbroker. The class was defined as all those public shareholders who engaged in "odd-lot" transactions. What was verifiable in *Eisen* was essentially membership in the class and damages.

In the instant action although the definition of the class includes all those who used the Carte Blanche credit card for business as well as consumer purposes, proof of the use to which a card was put by a cardholder is fairly analogous to proving membership in a class. The obvious, and perhaps ultimately fatal, difference is that in this case, proof of the use to which a card was put by a cardholder admits neither of such convincing independent confirmation nor of such an aggregation of the total damages to the class. It was for that reason that one of the classes proposed in *City of Philadelphia* was found to be unmaintainable. In that case, a variety of plaintiffs alleging antitrust violations proposed a variety of classes for the maintenance of class actions against a multitude of gasoline companies. Among the classes proposed were, in the States of Delaware, New Jersey and Pennsylvania, (1) all governmental entities that purchased the defendants' products, (2) all taxicab owners and operators who purchased the defendants' products, (3) all those commercial truckers who purchased defendants' products in tank wagon quantities, and (4) all those individual motorists who purchased defendants' products. On the theory that while those members of classes (1), (2), and (3) were likely to have retained records which would support membership in the class and damage claims, those of class (4) were unlikely to have retained such records, the Court found only classes (1), (2), and (3) manageable. Thus in neither *Eisen* nor *City of Philadelphia* was the individual question truly a subjective one. It was rather a fact of a transaction which was independently verifiable by the defendants.

The difficulty in the instant action is not proof of a transaction, but proof of circumstances and motives surrounding a transaction. The fact of a transaction here is as readily verifiable as in *Eisen* or *City of Philadelphia*.[8] Our inquiry then narrows to whether or not manageable methods are available to feasibly accommodate proof of the surrounding circumstances. In terms of the availability of either or both independent, presumably disinterested verification or supporting records, we think such manageable methods may be developed. A cardholder claiming a consumer use could have his employer or employers certify that a particular use of his card was not for business purposes. Further, the income tax returns and supporting documents and records could be made

---

8. See also In re Coordinated Pretrial Proceedings In Antibiotic Antitrust Actions, Opinion No. 2, M 19–93A (D.C.S.D. N.Y., 1971) in which it was decided that a consumer's druggist could certify particular purchases to prove a claimant's membership in a class.

available to the defendant to assess the vulnerability to challenge of a particular cardholder's claim. In short, it appears to us that with the cooperation of counsel, the submission and screening of affied to proof of perhaps certified claims by members of the class, together with resort to income tax returns and supporting records in appropriate instances would suffice to establish a consumer use of the card if the defendant is found to have violated the Truth In Lending Act.

Alternatively, the proposition on which many class actions alleging securities frauds are permitted to proceed could be adopted. The principal individual question in securities fraud cases (aside from damages which, of course, is an individual question in every class action) is usually one of reliance, i. e., whether or not the individual purchaser or seller of the securities relied on the misrepresentations of the defendant in buying or selling the securities. That proposition is, as quoted in Katz I, that,

" . . . the possible necessity for separate trials on specific individual issues does not bar a class action." Epstein v. Weiss, 50 F.R.D. 387 (D.C. E.D.La., 1970).[9]

This proposition is consistent with the Advisory Committee's Note to F.R.Civ. P. 23 at 39 F.R.D. 98 (1966). In discussing Subsection (c) (4) which provides that,

"[W]hen appropriate (A) an action may be brought or maintained as a class action with respect to particular issues * * *",

the Advisory Committee noted that,

"[F]or example, in a fraud or similar case the action may retain its 'class'

character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims."

Coming in to prove the use to which the cardholder put his card and damages would not necessarily mean coming into this district. Since the defendant operates nationwide, provision may be made for the prosecution by the members of the class of their individual claims in their home districts. This alternative is available, of course, in conjunction with, as well as an alternative to the submitting of affied to claims.

It must be remembered that the foundation of a class action is that it is "a semi-public remedy administered by the lawyer in private practice". Kalven and Rosenfield, The Contemporary Function Of The Class Suit, 8 U.Chi.L.Rev. 684, 717 (1941). It is often the only practical effectuation of remedial provisions of legislative policies. The action of Federal agencies entrusted with the enforcement of public policy is limited to compelling compliance with a statute. Private litigation, particularly in the form of a class action, serves to supplement administrative action in furthering the public policy. See J. I. Case v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed. 2d 423 (1964). Indeed, only private litigants may seek damages which are usually an integral aspect of a statutory scheme.[10]

In conclusion, we think manageable methods are available for the resolution of the individual questions of the use to which the cardholder put his

---

9. To support this proposition the following cases were cited in Epstein: Green v. Wolf Corporation, 406 F.2d 291 (2d Cir. 1968) ; Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968) ; Harris v. Palm Springs Alpine Estates, Inc., 329 F. 2d 909 (9th Cir. 1964) ; Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42 (D.C.S.D.N.Y., 1966) ; Fischer v.

Kletz, 41 F.R.D. 377 (D.C.S.D.N.Y., 1966) ; Weiss v. Tenney Corp., 47 F.R.D. 283 (D.C.S.D.N.Y., 1969) ; Dolgow v. Anderson, 43 F.R.D. 472 (D.C. E.D.N.Y., 1968) ; Fogel v. Wolfgang, 47 F.R.D. 213 (D.C.S.D.N.Y., 1969) ; Mersay v. First Republic Corp., 43 F.R.D. 465 (D.C.S.D.N.Y., 1968).

10. See Katz I, n. 6.

credit card and the damages he suffered, and therefore find the common questions to predominate over the individual questions and the class action to be superior to other available methods for the fair and efficient adjudication of the controversy.[11]

Further, we find that the class is divisible into subclasses as allowed by Subsection (c) (4) (B).[12] The primary class will consist of all those authorized holders, since July 1, 1969, of one of the defendant's credit cards,[13] and will be the focus of the allegations with respect to the annual charge. There will be two subclasses. One will consist of all those authorized holders, since July 1, 1969, of one of the defendant's credit cards who were assessed a late charge for an overdue unpaid balance, and will be the focus of the allegations with respect to the late charge. The other will consist of all those authorized holders, since July 1, 1969, of one of the defendant's credit cards who paid finance charges pursuant to the defendant's extended payment plan, and will be the focus of the allegations with respect to the finance charge.

11. We are compelled to note here the oft-stated and oft-applied principle that if there is to be error it should be made in favor of the maintenance of a class action. See Esplin v. Hirschi, *supra*, n. 9. Nonetheless, this finding has not been easy in its arrival. The question of the manageability of this action as a class action is a close one. We have approved the maintenance of this action as a class action, with neither the "petulant predictions of doom" nor the "cheerful readiness to experiment" which Professor Kaplan forecast. See Kaplan, Continuing Work Of The Civil Committee: 1966 Amendments Of The Federal Rules Of Civil Procedure (I), 81 Harv.L.Rev. 356 (1967). Rather we have approached it with particular regard for precedent and the policies underlying both F.R.Civ.P. 23 and the Truth In Lending Act, and with consideration for both plaintiff's and defendant's positions as will become more apparent hereinafter. Our conclusion, we think, will ultimately

## NOTICE

■ Notice to the members of a class in a class action is governed by (1) fundamental due process standards and (2) the requirements of F.R.Civ.P. 23 (c) (2). In Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) the controlling requirement of fundamental due process was stated to be,

". . . notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

F.R.Civ.P. 23(c) (2) provides as follows: "In any class action maintained under subdivision (b) (3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." [14]

This provision is "designed to fulfill [the] requirements of due process". Advisory Committee's Note, 39 F.R.D.

facilitate the final disposition of this action, fairly and efficiently.

12. See Katz I, n. 5.

13. As previously noted, the primary class cannot be defined to include only those who used the card for consumer purposes since that cannot be predetermined. The class need not be limited to only those who will ultimately recover, however, since, of course, the common questions need not be total or dispositive. Dolgow v. Anderson, 43 F.R.D. 472, 490 (D.C.E.D.N.Y., 1968).

14. In addition F.R.Civ.P. 23(c) (2) provides that,
"[T]he notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel."

98, 107 (1966). In accommodating that design it must be borne in mind that it is contemplated by a Subsection (b) (3) class action that all those members who do not request exclusion will be bound by the judgment. F.R.Civ.P. 23(c) (3). The effectuation of notice is thus most crucial in a class action, such as the instant class action, which is maintained pursuant to Subsection (b) (3). Indeed notice is only required by F.R.Civ.P. 23 in such a class action.

F.R.Civ.P. 23(c) (2) provides that generally notice should be the best practicable under the circumstances. However, it provides that in specific instances when members of a class can be identified through reasonable effort, those who can be so identified shall be notified individually. In this case, the individual members of the whole class can be readily identified through reasonable effort. It is simply a matter of Carte Blanche assembling a complete list of all those who have been authorized holders of its credit card since July 1, 1969. Since all members of the subclasses are necessarily members of the primary class, all members of both the primary class and the subclasses will be notified of the action. While the breadth of individual notice will not effect economies, it is, as the best possible notice, dictated by the circumstances, particularly that of the ease with which the individual members of the class can be identified. Further, as the best possible notice, its compliance with both the rule, and a fortiori, the requirements of due process, which must be the primary considerations, can not be doubted.

We are not unaware of Eisen v. Carlisle & Jacquelin, 52 F.R.D. 253 (D.C. S.D.N.Y., 1971). In that case it was stated that,

". . . where a class consists of a large number of claimants with relatively small individual claims, notice to individual class members, as a legal and practical matter, becomes less important and need not be unduly emphasized or required."

One of the basic rationales underlying the class action mechanism is that it will afford large numbers of claimants with similar but individually small claims access to the courts. Nevertheless the rule itself provides, indeed requires, individual notice when the individual members of the class are identifiable through reasonable effort. Factually, Eisen involved a considerably larger class than that with which we are confronted in the instant action. Further, the approximately 2,000,000 of the 6,000,000 members of the class who were identifiable in Eisen were not nearly as easily identifiable as those in this case. We have therefore concluded that the breadth of the notice which we are requiring in this case will not necessarily impose the "insuperable tariff on prosecution of the case" which was anathema in Eisen.

Before discussing the form, content, and manner of dissemination of the notice we must decide who shall pay its cost. Although the rule makes no provision for the payment of the cost of notice, generally, the cost is to be borne by the plaintiff at least in the first instance. Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968); Weiss v. Tenney Corp., 47 F.R.D. 283 (D.C.S.D. N.Y., 1969); Richland v. Cheatham, 272 F.Supp. 148 (D.C.S.D.N.Y., 1967). See Ward and Elliot, The Contents And Mechanics Of Rule 23 Notice, 10 B.C.Ind. & Comm.L.Rev. 557 (1969) and Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure, supra. While the matter is apparently discretionary with the courts, we think that in this case the general tack should be taken. We appreciate that the costs of notice will not be insubstantial. However, the courts have held that this burden may be shifted to defendants (who usually have more of

an ability to bear the costs) only when the merits of the case suggest the probability of the plaintiff's successful prosecution of the action. Eisen v. Carlisle & Jacquelin, 52 F.R.D. 253 (D.C.S.D.N.Y., 1971) and Dolgow v. Anderson, 43 F.R.D. 472 (D.C.E.D.N.Y., 1968). In following the general practice of requiring the plaintiff to pay for the cost of notice, we are not unmindful of the merits of the instant action.[15] Too, the genuine issues of fact which exist will have to be resolved by the jury which the plaintiff has demanded. This makes less certain any review of even those of the merits with potential. The cost of notice, then, shall be borne initially by the plaintiff.[16] If, as stated in Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968),

". . . financial considerations prevent the plaintiff from furnishing individual notice to these members, there may prove to be no alternative other than the dismissal of the class suit." [17]

The cost of notice, of course, will be recoverable by the plaintiffs if the action is prosecuted successfully.[18] For the purpose of taxing costs, however, in the event of the success of the action, the class and the two subclasses will be treated as separate and distinct actions. Unless the action is successfully prosecuted by the primary class on the claim with respect to the annual charge (in which case the total cost of notice will be recoverable), the cost of notice will be allocated among the subclasses, and only those costs allocable to the subclass or subclasses which are successfully prosecuted will be recoverable. The allocation will be by the number of members in the successful subclass or subclasses as compared with the number in the primary class.

■ There remains for us to consider the form, content, and manner of disseminating the notice. The form and content of the notice is set forth as Appendix A. Briefly, the notice advises the members of the class of the pendency of the proposed action; (1) of the rights (a) to be excluded and (b) to appear, if desired, if exclusion is not requested; (2) of the binding effects of a judgment if exclusion is not requested; (3) of the possibility of liability for the share of the costs allocable to the unsuccessful class or subclasses; and (4) of the possibility, if exclusion is not requested, of a counterclaim by Carte Blanche for sums alleged to be owed to Carte Blanche. The bottom portion of the notice is to be perforated so that it can be detached and returned to the Clerk of this Court to request exclusion. Those who do not desire to be excluded need not return the bottom portion, i. e., no preliminary proof of claim or indication of intent to prove a claim will be required. All those who do not request exclusion will become members of the class.

Mechanically, notice will be produced and disseminated in the following manner. The cardholders with personal accounts will be divided into two groups: (1) those members of the class who will be sent a regular monthly bill during the

15. As a result of an essentially evidentiary hearing, substantial evidence as to the merits presently appears in the record.

16. The only other conceivable responsibility for the cost of notice, other than the plaintiff or the defendant, would lie with the court. We agree with the Court in Eisen v. Carlisle & Jacquelin, 391 F. 2d 555, 568 (2d Cir. 1968) where it was stated that there was no support for the " * * * position adopted in School District of Philadelphia v. Harper & Row Publishers, Inc., 267 F.Supp. 1001 (E.D.Pa.1967) that the court itself has the burden of sending out the proper notice."

17. See also Buford v. American Finance Co., 33 F.Supp. 1243 (D.C.N.D.Ga., 1971) and Givens v. W. T. Grant Co., Civil Action No. 14295 (D.C.D.Conn., 1971).

18. See Katz I, n. 6.

month next practicable after the production of the notice, and (2) those members of the class who will not. With respect to those who will be sent regular monthly billings, the plaintiff will supply to the defendant a sufficient number of notices and unstamped, self-addressed return envelopes for inclusion in the monthly billings. The plaintiff will bear the burden of the cost of the production of the notice and the purchase of the return envelopes. The plaintiff, further, will reimburse the defendant for the cost of the labor to stuff such notices and return envelopes in with the defendant's monthly billings.[19] With respect to those who will not be sent regular monthly billings, the defendant will produce for the plaintiff, at the cost of the plaintiff, address labels. Envelopes on which to place those address labels will be purchased by the plaintiff and the plaintiff will be responsible for stuffing those envelopes with the notices and return envelopes, and mailing them, postage prepaid, to the members of the class who will not be sent regularly monthly billings, including those who are no longer Carte Blanche cardholders.

From the information furnished the court by the plaintiff and defendant, we estimate that the total cost to the plaintiff of effecting notice in the manner proposed will be approximately $37,500.-00. In the context of the magnitude of the instant action this amount does not appear to be so great as to amount to the sounding of its death knell.

Finally, the Order granting the plaintiff's Motion For Determination Of Class Action will be certified for appeal pursuant to 28 U.S.C. § 1292, and the proceedings will be stayed pending appellate disposition of any appeals taken. Included among the proceedings which will be stayed will be the defendant's recently made (November 8, 1971) Motion For Partial Summary Judgment.

An appropriate order will be entered.

## APPENDIX A

### NOTICE OF PENDENCY OF CLASS ACTION

Reuben Katz, a Carte Blanche cardholder, has commenced a legal action in this Court against Carte Blanche Corporation seeking damages for alleged violations of the Federal Consumer Credit Protection Act. Further, Mr. Katz seeks to maintain the action not only on his own behalf, but also on behalf of all those persons who have been authorized Carte Blanche cardholders since July 1, 1969. The violations alleged are that Carte Blanche has failed to disclose to its cardholders various terms and conditions of its credit plan in the form, manner and terminology required by the Act. Carte Blanche has denied the alleged violations, and has asserted various affirmative defenses to the action.

THE COURT HAS NOT EXPRESSED ANY OPINION ON THE MERITS OF THE ACTION AND THE SENDING OF THIS NOTICE IS NOT TO BE CONSTRUED AS AN EXPRESSION OF ANY OPINION.

The purpose of this notice is simply to advise the members of the class on whose behalf the action has been brought of the pendency of the action and of their rights with respect thereto as follows:

1. Unless you request to be excluded from the class by _____ (by postmark) you will be included in the class and,

   a. any judgment, whether favorable or not will bind you,

   b. you may be liable to share, proportionately, the costs of the action if it is unsuccessful, and

---

19. If the inclusion in the regular monthly billings of the notice and the unstamped, self-addressed envelopes preempts the inclusion of revenue producing advertisements, the loss of revenue will be borne by the defendant. This loss, however, may be recoverable by the defendant if it prevails.

c. you may be subject to a counterclaim by Carte Blanche for any sums which you may owe Carte Blanche and which are overdue.

2. To request to be excluded from the class you must inform the Clerk of this Court by appropriately marking the attached notice and returning it in the enclosed return envelope by _____ (by postmark).

3. If exclusion is not requested but you prefer to be represented by your own counsel, you may enter an appearance through him but not later than _____ (by postmark).

The class does not include company accounts, but only personal accounts. Further, of the personal accounts, because those cardholders who used their cards exclusively for business or commercial purposes will ultimately be eliminated from the class should the action be successful, such cardholders must request exclusion to avoid the possibility of liability for the proportionate costs of an unsuccessful action.

The attorneys representing the class are Litman, Litman, Harris and Specter, P.A., Esquires, 1320 Grant Building, Pittsburgh, Pennsylvania 15219.

REUBEN J. KATZ, on behalf of himself and all others similarly situated,

Plaintiff

vs.

CARTE BLANCHE CORPORATION,

Defendant

NO. 69–1326
CIVIL ACTION

NAME _____

ADDRESS _____

_____

CARTE BLANCHE CREDIT CARD NO. _____

I hereby request to be excluded from the class on whose behalf Reuben Katz has filed the above-captioned civil action.

_____
Signature