**Jay S. ZELTZER, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**CARTE BLANCHE CORPORATION, Defendant.**

**Civ. A. No. 71–822.**

United States District Court, W. D. Pennsylvania.

June 24, 1976.

Mark A. Senick, Senick & Penkower, Monroeville, Pa., for plaintiff.

Cloyd R. Mellott, John H. Morgan, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for defendant.

## OPINION

TEITELBAUM, District Judge.

The availability of a federal forum for trial of a counterclaim rooted in state law but arising out of the same transaction or occurrence that is the basis of plaintiff's federal cause of action is an increasingly difficult problem in this era of proliferating consumer class litigation.

On one hand, the language of Rule 13(a) of the Federal Rules of Civil Procedure [1] indicates that such counterclaims are compulsory and, as such, require no independent basis for the exercise of federal jurisdiction, but must be asserted by a defendant and heard by the Court as falling within its ancillary jurisdiction. On the other hand, important policy considerations—stemming from a clear understanding that the federal judicial system rests on a concept of limited jurisdiction, the expansion of which necessarily diminishes the power of the states to adjudicate controversies governed by state law—dictate that federal courts proceed cautiously in permitting the assertion of so-called "*debt collection*" counterclaims in suits originally brought to recover on an exclusively federal cause of action.

The case now before the Court, a purported class action under the Federal Truth in Lending Act (15 U.S.C. § 1601 et seq.), presents this problem by way of plaintiff's motion to dismiss, for lack of subject matter jurisdiction, defendant's counterclaim against him for the balance owing on his account with Carte Blanche. Both the initial claim and the counterclaim arise out of plaintiff's purchase of airline tickets under a deferred payment plan selected by him pursuant to arrangements available through the use of his Carte Blanche credit card. Plaintiff claims that this transaction resulted in a disclosure violation of the Truth in Lending Act; defendant counterclaims for payment of the balance of the purchase price with interest. There is no independent federal jurisdictional basis for the counterclaim.

■ The problem thus presented to the Court should be narrowly delineated. It quite obviously does not arise where a counterclaim rests on an independent basis of federal jurisdiction—even if deemed permissive under F.R.Civ.P. 13(b), such counterclaims are of course assertable in a federal forum. Nor do I think a problem should exist in instances where a counterclaim arises out of the same transaction or occurrence that is the subject matter of an original claim controlled by state law.[2] If "logically related" to the opposing party's claim, see *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631 (3d Cir. 1961), such counterclaims are properly characterized as compulsory and, falling within the bounds of ancillary federal jurisdiction, must be asserted in the federal court proceeding on the original claim.

Rather, the problem we now confront pertains only where, as here, the Court is asked by way of a defendant's counterclaim to try a cause of action amounting to no more than a state debt collection suit founded on the same transaction or occurrence that generated plaintiff's exclusively federal suit to enforce a right or duty conferred or imposed by federal statute. If such a counterclaim is deemed compulsory, it may be, indeed must be, asserted in the federal forum; if deemed permissive, it

---

1. The relevant portion of Rule 13(a) concerning compulsory counterclaims provides as follows:

   "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

2. Thus, for example, a counterclaim filed in a federal diversity action for personal injury is properly assertable if it arises out of the same occurrence or incident that gives rise to plaintiff's suit.

should be dismissed for lack of jurisdiction.[3] Thus, the Court's characterization of the counterclaim *sub judice* will control the disposition of the motion now before it.[4]

■ In *Great Lakes Rubber Corp. v. Herbert Cooper Co., supra* at 634, the Court of Appeals for the Third Circuit stated the test for determining whether a counterclaim is compulsory *vel non* as follows:

". . . [A] counterclaim is compulsory if it bears a 'logical relationship' to an opposing party's claim. . . . The phrase 'logical relationship' is given meaning by the purpose of the rule which it was designed to implement. Thus, a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action. Indeed the doctrine of *res judicata* compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently." (citations omitted)

The Court's present inquiry, then, devolves into a question of whether defendant's debt collection counterclaim bears a "logical relationship" to plaintiff's claim un-

der the Truth in Lending Act. On a purely transactional level, such a relationship obviously exists: both claim and counterclaim arise out of a singular occurrence, plaintiff's purchase of airline tickets through the use of his Carte Blanche card. But in these circumstances, I do not consider the presence of transactional identity alone sufficient to establish, for compulsory counterclaim purposes, a logical relationship between plaintiff's claim and defendant's counterclaim. Indeed, after careful consideration of this matter, I am persuaded that conventional analysis, undertaken and coupled with a due regard for the imperatives of federal judicial policy, supports the conclusion that the requisite logical relationship is lacking in this case.

Plaintiff brings this action exclusively under a federal statute, the Truth in Lending Act. At issue is whether Carte Blanche complied with the technical requirements of the Act, and the regulations promulgated thereunder, in terms of disclosure of required credit information in its periodic billings to plaintiff. The outcome would seem to turn upon an interpretation of federal law, as well as upon the resolution of disputed factual issues regarding the disclosures.

Defendant's counterclaim, however, bears no relationship to these matters, but is, rather, a debt collection suit rooted in and governed by state contract law. While the two claims stem from the same underlying business transaction, they involve entirely distinct legal issues: plaintiff's claim con-

---

**3.** The latter result of course would not obtain in the presence of both diversity of citizenship and an amount in controversy of over $10,000.00 on the counterclaim. Here, while there may be diversity jurisdiction, defendant's counterclaim is in an amount far under $10,000.00.

**4.** It should be recognized that, in full flower, the problem set out above has ramifications that do not arise in the instant context. In this regard, we note that a plaintiff class has not yet been certified in this case, and, accordingly, the Court is concerned only with defendant's counterclaim against named plaintiff Zeltzer. Thus, we need not address here the potentially troublesome question of whether absent members of a certified class are "opposing parties" subject to counterclaim under Rule 13(a), com-

pare *Weit v. Continental Illinois National Bank and Trust Co.*, 60 F.R.D. 5 (N.D.Ill.1973), with *Donson Stores, Inc. v. American Bakeries Company*, 58 F.R.D. 485 (S.D.N.Y.1973), nor, indeed, the significant policy considerations that arise on the far side of a conviction that few Rule 23 class actions could be deemed manageable for certification purposes if the district court were required to determine a multitude of counterclaims in conjunction with each set of original claims.

Additionally, it should be noted that we are not now concerned with the so-called "defensive set-off" exception to Rule 13(b). See 6 Wright & Miller, Federal Practice & Procedure, Civil § 1422, at p. 122 (1971).

cerns the application of the Federal Truth in Lending Act; the counterclaim does not concern the Truth in Lending Act or any other federal law.[5] Moreover, the factual issues are distinct. Plaintiff's claim entails proof of a limited set of facts relating to the nature of the disclosures made by defendant. The counterclaim involves proof of a contract, its validity, the record of payments and plaintiff's default. In these circumstances, where claim and counterclaim lack even a close similarity of factual and legal issues, I find that the respective claims are "offshoots" of the same basic transaction, but not the "same basic controversy between the parties," and that separate trials on each distinct claim will not involve a "substantial duplication of effort and time by the parties and the courts." The two claims are thus not logically related in the Court's view of the standard enunciated in *Great Lakes Rubber, supra.* Accordingly, defendant's counterclaim is not compulsory, but permissive; as such, it will be dismissed.[6]

5. In this regard, the Court has not failed to note defendant's argument that its counterclaim is compulsory because, it asserts, plaintiff's defense to the counterclaim is based solely upon the Truth-in-Lending Act. In support of this assertion, defendant cites plaintiff's deposition of July 18, 1975, in which plaintiff mentions, somewhat vaguely, that he contemplates, *inter alia,* a Truth-in-Lending defense to the counterclaim. On this basis, defendant asks the Court to assume that the federal statute will be the core of plaintiff's defense to the corporation's suit against him. Suffice it to say that the range of plaintiff's possible legal defense is not limited by the lay opinions expressed in his deposition. At this stage, the Court is both unable and unwilling to simply assume that Zeltzer's defense will rest on federal law, and not on any one of a number of potentially relevant contract principles.

6. It is appropriate at this juncture to briefly address a point raised by Carte Blanche's suggestion that its counterclaim herein should be held compulsory as a matter of judicial consistency, in light of the language of the notice to potential class members which this Court set forth in the appendix to its second opinion in *Katz v. Carte Blanche Corp.,* 53 F.R.D. 539 (1971). That notice contained the following language:

We might at this point terminate our discussion of the instant question. However (having no wish to cloak the full extent of my thinking in this matter in the guise of a pure application of *Great Lakes Rubber*), I believe it is important to emphasize that corollary considerations shape and reinforce the Court's view that the above result is a proper application of the logical relationship test formulated in that leading case.

In this regard, the language of *Roberts v. National School of Radio and Television Broadcasting,* 374 F.Supp. 1266 (N.D.Ga. 1974), is apposite. That case involved plaintiff's claim that defendant failed to make certain credit disclosures in a financing agreement in accordance with Regulation Z disclosure requirements promulgated under the Truth in Lending Act, and defendant's counterclaim for the balance due under the note. After holding that the counterclaim met none of the four tests determinative of compulsoriness under Rule 13(a),[7] including

"1. Unless you request to be excluded from the class by ___ (by postmark) you will be included in the class and,

    \*    \*    \*    \*    \*    \*

(c) you *may* (emphasis added) be subject to a counterclaim by Carte Blanche for any sums which you may owe Carte Blanche and which are overdue."

This language, defendant submits, clearly indicates that the Court in *Katz* viewed counterclaims arising out of unpaid balances owing to Carte Blanche by potential members of the plaintiff class as compulsory. As a matter of fact, however, the Court held no such view in *Katz,* and indeed was never called upon to decide the instant issue one way or the other. Nor do I think the language of the *Katz* notice intimates anything to the contrary. The use of the word "may"—the meaning of which could hardly be more plain—was intended to cover a multitude of contingencies, and was employed simply to alert potential class members to the *possibility* that their participation in the litigation would render them subject to suit by Carte Blanche if, *inter alia,* the latter's counterclaims were deemed compulsory.

7. The court stated these four tests (at p. 1270) as follows:

"(1) Are the issues of fact and law raised by the claim and counterclaim largely the same?

the logical relationship test, the court dismissed it as permissive, stating as follows:

" . . . Given the remedial nature of TIL [Truth-in-Lending] and the broad public policy which it serves, federal courts should be loath to become immersed in the debt collection suits of the target [sic] of the very legislation under which a TIL plaintiff states a cause of action.

The plaintiff's claim falls within the very narrow scope of a federal statute, the defendant's within the very broad range of state remedies. While both the plaintiff and the defendant state claims arising from the same transaction in the sense that each party is suing because of the other's obligations on the note, the plaintiff's claim is in furtherance of a stated federal legislative policy. The defendant contends simply that plaintiff is in default on a private duty. To permit the defendant to pursue its claim in federal court would unduly complicate the expeditious resolution of TIL litigation. The liability to which a violator of TIL is subject has been characterized as a penalty and a deterrent to activity prohibited by Congress. *Mourning v. Family Publications Service, supra* [411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973)]. To permit the defendant in a TIL action to utilize the proceedings merely as a forum to state grievances against a debtor-plaintiff would be an incongruous result and clearly prejudicial to the plaintiff's claim. Moreover, it would involve the court in questions of absolutely no federal significance. . . . " *Id.* at 1271.

I fully agree, and therefore join Judges Willson and Snyder of this Court in adopt-

ing the rationale of the *Roberts* case.[8] In doing so, I am mindful of a fact that appears to have escaped the attention of the parties to this case: in *Mims v. Dixie Finance Corp.*, No. C75–627A (May 6, 1976), the U. S. District Court for Northern Georgia, *en banc*, held that acounterclaim for the balance of the underlying obligation in a federal Truth in Lending action is a compulsory counterclaim under Rule 13(a), and thereby "overrule[d] the line of cases in [that] Court beginning with *Roberts* . . . .." Thus, it would seem that *Roberts* is no longer viable law in the federal forum in which the case was decided.

■ That fact, however, does not diminish my belief in the fundamental merit of the rationale set forth by Judge Edenfield in *Roberts* and subsequently embraced by two members of this Court. In my judgment, the district court's decision in *Mims* —by which this Court obviously is not bound—is unfortunate, and, if accepted, would operate to open the federal courts to a flood-tide of debt collection counterclaims involving "questions of no federal significance."[9] Such claims are controlled entirely by state law, and the state should have the right to determine them without federal intervention. In my view, the *Mims* decision opts for a modicum of real or imagined convenience at the expense of the important principle of limited federal jurisdiction. In an era appreciative of the salutary effects of limited federal judicial and governmental intrusion into state affairs, *Mims* endorses the broad exercise of federal jurisdiction, and thus federal power, solely to gain what amounts to little more than adjudicatory tidiness. I believe that this is a mistake, and therefore decline to follow that case.

*Household Consumer Discount Company,* Civil Action No. 75–1023, decided by Judge Snyder on January 19, 1976.

(2) Would *res judicata* bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?
(3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?
(4) Is there any logical relation between the claim and the counterclaim?"

8. See *Shriver v. Sears, Roebuck and Company,* Civil Action No. 75–676, decided by Judge Willson on January 16, 1976, and *Bloomer v.*

9. The difficulty this creates becomes particularly acute in the context of broad consumer-type class actions. See n. 4, *supra.* I do not believe that we should permit the filing of counterclaims in this type of case to have the effect of the wholesale importation into federal law of state causes of action.

The foregoing discussion is dispositive of the matters now before the Court. For the reasons stated above, plaintiff's motion will be granted and defendant's counterclaim dismissed as permissive. Carte Blanche is of course perfectly free to pursue its contract claim in state court.