Jay S. ZELTZER, in behalf of himself and all others similarly situated, Plaintiffs,

v.

CARTE BLANCHE CORPORATION, Defendant.

Civ. A. No. 71–822.

United States District Court, W. D. Pennsylvania.

April 30, 1974.

Robert G. Sable, Baskin, Boreman, Wilner, Sachs, Gondelman & Craig, Pittsburgh, Pa., for plaintiffs.

Cloyd R. Mellott, John H. Morgan, Robert W. Doty, James S. Curtin, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for defendant.

## OPINION

TEITELBAUM, District Judge.

On September 2, 1971, this suit, purporting to be a class action under the Truth-In-Lending Act (TILA), 15 U.S. C. § 1601 et seq., was filed. The gist of plaintiff's complaint was that defendant had violated TILA in the period between January 1, 1970 and November 1, 1970 by failing to properly disclose the manner in which overpayments to cardholder's airline charge accounts would be credited. It was alleged that by failing to properly disclose the manner in which such a transaction would be handled, Carte Blanche was in violation of Section 1637(a)(2), (b)(8) and (b)(9) of TILA and Section 226.7a(2), b(8) and b(9) of Regulation Z (12 CFR § 226 et seq.).

On November 29, 1971, at a status conference with counsel for both parties present, further proceedings in this case were postponed until a decision was rendered by the Court of Appeals for the Third Circuit in the similar and related case of Katz v. Carte Blanche, 53 F.R.D. 539 (W.D.Pa.1971).[1] On March 15, 1974, the Court of Appeals en banc rendered a decision in the case.

Prior to the en banc Katz decision, the parties had filed briefs on both defendant's motion to dismiss and plaintiff's motion for class determination. Although at the time of the Katz decision both motions were seemingly ripe for adjudication, the Katz opinion made clear that, at least under certain specified circumstances, which circumstances are present in the case sub judice, a decision on the merits should precede any

adjudication on the class question. With this background in mind, we proceed to the merits of plaintiff's cause of action, called into question here by Carte Blanche's motion to dismiss.

During the period in question, Carte Blanche made the following disclosures in its monthly bills to cardholders who used the Carte Blanche card to purchase airline tickets:

*Airline Charges*

*Explanation of Extended Pay Plan*

Monthly installments are billed as follows:

| Amount of Individual Ticket | Monthly Installment |
|---|---|
| $600.00 or less | 1/12 (Min. $10. per mo.) |
| $600.01 to $900.00 | 1/18 |
| $900.01 or more | 1/24 |

Larger payments may be made, or the entire remaining balance may be paid at any time without penalty.

A monthly finance charge imposed at the periodic rate of 1½% of the unpaid balance at billing date is added in accordance with tariff filed by airlines. This is an annual percentage rate of 18%.

Default in any payment due may, at our option, render the entire balance due.

As can readily be seen, Carte Blanche makes no statement whatsoever in its disclosure as to the allocation of overpayments other than to note that "Larger payments may be made . . . at any time without penalty." It appears that during the period in question, airline account overpayments were in fact credited to a cardholder's general account.[2] Plaintiff however contends that there was a violation of the above-cited sections of TILA and Regulation Z since he *understood* that Carte Blanche would follow a contrary practice, that is,

---

1. Questions of service of process and the statute of limitations were also discussed at the November 1971 conference and later briefed by the parties in regard to defendant's motion to dismiss. Because of the disposition of this case on other grounds, it is unnecessary to pass upon these questions.

2. To the extent that matters outside the pleadings have been considered by the Court, defendant's motion shall be treated as a motion for summary judgment under Rule 56. See Rule 12(c) of the F.R.Civ.P.

allocate airline account overpayments as credits to a cardholder's airlines account.

■ In framing the issue in this case, it is important to understand that whether or not financial detriment was visited upon plaintiff as a result of overpayments being credited to one account rather than the other or whether the practice followed seems to be over-reaching and inappropriate are immaterial. The sole issue before the Court is whether or not defendant violated TILA and Regulation Z by failing to disclose its overpayment allocation procedure, regardless of the effect or merits of that procedure. Nor is the question before the Court whether a reasonable man would be justified in making the inference drawn by plaintiff, that airline overpayments would be credited to one's airline account. The question is whether Carte Blanche disclosed what it was required to disclose under the provisions of TILA and Regulation Z.

Section 1637 of TILA, which plaintiff contends has been violated, reads in pertinent part as follows:

*"Open end consumer credit plans—Required disclosures by creditor*

(a) Before opening any account under an open end consumer credit plan, the creditor shall disclose to the person to whom credit is to be extended each of the following items, to the extent applicable:

(1) The conditions under which a finance charge may be imposed, including the time period, if any, within which any credit extended may be repaid without incurring a finance charge.

(2) The method of determining the balance upon which a finance charge will be imposed.

*Statement required with each billing cycle*

(b) The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account

or with respect to which a finance charge is imposed, a statement setting forth each of the following items to the extent applicable:

(8) The balance on which the finance charge was computed and a statement of how the balance was determined. If the balance is determined without first deducting all credits during the period, that fact and the amount of such payments shall also be disclosed.

(9) The outstanding balance in the account at the end of the period.

(10) The date by which, or the period (if any) within which, payment must be made to avoid additional finance charges."

Section 226.7 of Regulation Z, the interpretation of TILA issued by the Federal Reserve Board of Governors under their mandate from Congress to prescribe regulations to effectuate the purposes of the Act (15 U.S.C. § 1604), reads in pertinent part as follows:

"(a) Before the first transaction is made on any open end credit account, the creditor shall disclose to the customer in a single written statement, which the customer may retain, in terminology consistent with the requirements of paragraph B of this Section, each of the following items, to the extent applicable . . . (2) The method of determining the balance upon which a finance charge may be imposed.

(b) Except in the case of an account which the creditor deems to be uncollectible or with respect to which delinquency collection procedures have been instituted, the creditor of any open-end credit account shall mail or deliver to the customer for each billing cycle at the end of which there is an outstanding debit balance in excess of $1.00 in that account, or with respect to which a finance charge is imposed, a statement or statements which the customers may retain setting forth in accordance with Paragraph (c) of this

section each of the following items to extent applicable: . . . .

(8) The balance on which the finance charge was computed, and a statement of how that balance was determined. If any balance is determined without first deducting all credits during the billing cycle, that fact and the amount of such credit shall also be disclosed.

(9) The closing date of the billing cycle and the outstanding balance in the account in that date, using the term 'new balance', accompanied by the statement of date by which, or the period, if any, within which, payment must be made to avoid additional finance charges."

■ While there is general language in both sections quoted above which might seem, at first glance, to support the conclusion that plaintiff, under this state of facts, has stated a cause of action, (e. g., that "the conditions under which a finance charge may be imposed" must be disclosed), this facile assumption is quickly dispelled when reference is made to Section 226.706 of Regulation Z, which reads as follows:

*"Open end credit—allocation of payments.*

(a) Section 226.7(a)(2) provides that before the first transaction is made on any open end credit account, the creditor must disclose 'the method of determining the balance upon which a finance charge may be imposed.' Section 226.7(b)(8) requires the creditor to disclose on the periodic statement 'the balance on which the finance charge was computed, and a statement of how that balance was determined.' The question is raised whether these provisions require a creditor to provide a description of the manner in which payments or other credits are applied to various portions of the balance or balances on which finance charges are computed.

(b) *In disclosing the method of determining the balance(s) upon which finance charges are computed, it is not necessary to show the method of allo-cating payments or other credits.* For example, explanation of the manner in which payments or credits may be applied to late charges, overdue balances, finance charges, insurance premiums, or other portions of balances is not required. Similarly, explanation of the method of allocating such payments between cash advance and purchase portions of the account is not required. Such explanations in many cases involve lengthy and complex descriptions which may unduly complicate disclosures.

(c) Explanation of the allocation method may be made by creditors where it can be done in conformity with § 226.6(c) which authorizes additional information or explanations as long as they are not stated, utilized, or placed so as to mislead or confuse the customer or contradict, obscure, or detract attention from the required disclosures."

(Interprets and applies 15 U.S.C. § 1637) [Reg. Z, 37 F.R. 13247, July 6, 1972]

■ It is, of course, a fundamental tenet of statutory interpretation that the specific supersedes the general. Section 226.706 is directly applicable to the situation at issue here and clearly provides that no disclosure need be made of the method of allocating overpayment credits to accounts. Nor can there be any question that Regulation Z itself is conclusive on this point. As held in Bone v. Hibernia Bank, 493 F.2d 135, (9th Cir. 1974), the deference due an administrative agency's construction of its own regulations requires court approval of a Regulation Z interpretation.

Therefore, for the reasons stated above, since plaintiff has failed to state a cause of action under the Truth-In-Lending Act, defendant Carte Blanche's motion to dismiss will be granted. The case having been disposed of on the merits in favor of defendant, there is no reason to pass upon plaintiff's class action motion. An appropriate Order in accordance with this Opinion will be entered.