Jay S. ZELTZER, on behalf of himself and all others similarly situated, Appellant,

v.

CARTE BLANCHE CORPORATION, Appellee.

No. 74–1651.

United States Court of Appeals, Third Circuit.

Argued Feb. 13, 1975.

Decided April 21, 1975.

Mark A. Senick, Senick & Penkower, Pittsburgh, Pa., for appellant.

Clyde R. Mellott, John H. Morgan, Robert J. Tate, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for appellee.

SEITZ, Chief Judge, and ALDISERT and GARTH, Circuit Judges.

GARTH, Circuit Judge.

This appeal calls upon us to determine the applicability of the Truth in Lending Act[1] to Carte Blanche's method of apportioning a cardholder's payment between the cardholder's airline account, which is subject to finance charges, and the cardholder's general account, which is not. The district court held that the Truth in Lending Act did not require Carte Blanche to disclose its method of apportioning payments. We reverse.

## I.

■ Defendant-appellee Carte Blanche Corporation (Carte Blanche)[2] is a national credit card company, which gives to cardholders the privilege of charging items at retail establishments.[3] Non-business retail purchases are recorded in the cardholder's Carte Blanche *general account;* are billed on a monthly basis; apparently are not subject to finance charges, and are payable upon receipt.[4]

A cardholder may also use his credit card to purchase airline tickets. Charges incurred for airline ticket purchases are billed in monthly installments under an extended payment plan and, in contrast to general account billings, are subject to finance charges.

During the time period from January 1, 1970 to November 1, 1970, Carte Blanche with its monthly billing statement made the following disclosures with reference to a cardholder's airline account:

*"Airline Charges*
*Explanation of Extended Pay Plan*
Monthly installments are billed as follows:

| Amount of Individual Ticket | Monthly Installment |
|---|---|
| $600 or less | $\frac{1}{12}$ (min. $10 per.mo.) |
| $600.01 to $900 | $\frac{1}{18}$ |
| $900.01 or more | $\frac{1}{24}$ |

"Larger payments may be made, or the entire remaining balance may be paid at any time without penalty.

"A monthly finance charge imposed at the periodic rate of 1½% of the unpaid balance at billing date is added in accordance with tariff filed by airlines. This is an annual percentage rate of 18%.

"Default in any payment due may, at our option, render the entire balance due."

The quoted language makes no mention of how a payment which exceeds the

---

1. Consumer Credit Protection Act, Tit. I, 82 Stat. 146, 15 U.S.C. § 1601 et seq.

2. As noted in our discussion, *see infra* at 1159, 1160, the district court properly considered defendant's motion to dismiss as one for summary judgment inasmuch as the court considered matters outside the pleadings. Carter v. Stanton, 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); Tomalewski v. State Farm Life Ins. Co., 494 F.2d 882 (3d Cir. 1973). Neither party on this appeal asserts that genuine issues exist as to material facts. Accordingly, the facts presented in the text are as stated in the pleadings, and in matters outside the pleadings which were considered by the district court.

3. *See generally* Katz v. Carte Blanche Corp., 496 F.2d 747 (3d Cir.) (en banc), cert. denied, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974).

4. If the general account charges are not paid in full within the requisite time period, late charges may be assessed on the overdue unpaid balances. As the plaintiff here does not allege that such late charges are in fact finance charges for which disclosure is required, *compare* Katz v. Carte Blanche Corp., 496 F.2d at 750 n.2, we do not treat this aspect of Carte Blanche's practices. *Cf.* 12 C.F.R. § 226.401. It was represented to this Court at oral argument, however, that failure of a cardholder to tender prompt payment after late charges are imposed upon the general account, may result in the account being deemed delinquent, the account being terminated, and collection proceedings being instituted.

For purposes of this appeal, we assume, as did the parties at oral argument, that a Carte Blanche general account is not subject to finance charges.

airline monthly installment (i.e. an "overpayment") is applied to the cardholder's airline and general accounts. During the period in question, unless specifically instructed by the cardholder,[5] an *airline account* overpayment, if less in amount than the total airline account balance then due, was not applied to reduce the airline account. Instead the overpayment was credited to the cardholder's general account, without regard to whether or not there were any outstanding charges in the cardholder's general account.[6] Carte Blanche's practice in applying an overpayment is best understood by illustration. For our purposes here, we have assumed: (1) an airline charge of $600.00 was incurred by a cardholder; (2) this charge required a monthly installment payment of $50.00, and (3) no specific instruction as to allocation of payments was given to Carte Blanche by the cardholder.

1. *Example 1:* The cardholder, with a *general account* balance of $150.00, pays a total of $500.00. The airline account would be credited with $50.00 (thereby leaving an outstanding balance of $550.00 in the airline account upon which finance charges would be incurred). The general account balance of $150.00 would be deemed paid in full. The remainder of the payment made [$500.00 minus ($150.00 + 50.00)], $300.00, would then be credited to the general account for application against future charges and would bear no interest. The remaining $550.00 balance in the airline account would not be reduced.

2. *Example 2:* The cardholder, with no general account balance, pays a total of $550.00. The airline account would be credited with only $50.00 (thereby leaving an outstanding balance of $550.00 in the airline account upon which finance charges would be incurred). The balance of the payment made ($500.00) would be credited to the general account for application against future charges and would not bear interest.[7]

The practice in applying airline account overpayments is easily summarized. No advice was given by Carte Blanche to its cardholders that they could direct the allocation of payments between two accounts. Accordingly, unless the cardholder paid the entire airline account balance plus any outstanding general account balance, the airline account would be reduced only by the amount of the minimum monthly installment due. Any overpayment credited to the cardholder's general account would not bear interest, although the airline account balance remaining unpaid would be subject to finance charges.

On August 30, 1971, on behalf of himself and all others similarly situated, plaintiff-appellant Zeltzer filed this action against Carte Blanche. He alleged

---

5. Nowhere in the Carte Blanche literature in the record before us, does it appear that the cardholders were ever advised that they could direct the manner of their payment to a particular account and in a particular sum.

6. Carte Blanche has since changed its practice in allocating overpayments to now apply such overpayments to the balance of the airline account, if such existed, even without instructions to do so by the cardholder. Carte Blanche Brief at 19 n.5.

7. For a complete illustration of Carte Blanche's payment allocation practice, we describe two other factual circumstances. For these examples we make the same assumptions as are set out in the text.

 3. *Example 3:* The cardholder, with no general account balance, pays a total of $600.00, an amount equal to the airline account charges. The airline account balance would be deemed paid in full.

 4. *Example 4:* The cardholder, with no general account balance, fails to pay the airline account installment when due. Despite this failure, the amount of the airline account installment ($50.00) would be deducted from the airline account balance and would appear as a charge in the cardholder's general account. Consequently, the cardholder would have an unpaid airline account balance of $550.00, upon which finance charges would be incurred. The cardholder would also have a general account balance of $50.00, which would not be subject to a finance charge, but which would be subject to Carte Blanche's delinquency account procedures.

*See* Carte Blanche Brief at 19 n.5.

that Carte Blanche violated the Truth in Lending Act from January 1, 1970 to November 1, 1970 by failing to disclose its practice in applying overpayments made in connection with a cardholder's airline account. Carte Blanche moved under Fed.R.Civ.P. 12 [8] to dismiss the complaint for the following alternative reasons: (1) the court lacked *in personam* jurisdiction over Carte Blanche by reason of defective service; (2) the complaint failed to set forth a claim for relief under the Truth in Lending Act; [9] (3) if a claim for relief under the Truth in Lending Act were alleged, plaintiff's action was barred because it was already included within another purported class action then pending before the same district court. [10] With the consent of all parties, further proceedings in this case were postponed pending decision of this Court in Katz v. Carte Blanche Corp., 496 F.2d 747 (3rd Cir.) (en banc), cert. denied, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). Following decision of this Court in *Katz*, plaintiff filed an amended complaint [11] and moved for class determination pursuant to Fed.R. Civ.P. 23. Thereafter the district court granted summary judgment to Carte Blanche, *see* Fed.R.Civ.P. 12(c), holding that Carte Blanche was not obligated under the Truth in Lending Act to disclose "the method of allocating overpayment credits to accounts." Zeltzer v. Carte Blanche Corp., 375 F.Supp. 717 (W.D.Pa.1974). [12] We disagree.

## II.

The complaint alleged that the Truth in Lending Act obligated Carte Blanche to disclose the manner in which it applied payments to airline account balances and that Carte Blanche had failed to make these disclosures. Accordingly, we address ourselves to the sole question of whether Carte Blanche disclosed all that it was required to disclose under the Truth in Lending Act.

The Truth in Lending Act requires disclosure of terms and conditions of credit extension under open end credit plans. *See* 15 U.S.C. § 1637, Regulation Z, 12 C.F.R. § 226.7. When airline tickets are purchased by a Carte Blanche cardholder on a deferred payment basis, finance charges are imposed upon the balance remaining "open" at the end of each month in the airline account. Hence, the Carte Blanche airline account, unlike Carte Blanche's general account, is an open end credit plan, for which disclosures are required. *See* III, *infra*; 15 U.S.C. § 1602(i); Regulation Z, 12 C.F.R. § 226.2(r).

The pertinent disclosure provisions of the Act provide:

(a) Before opening any account under an open end consumer credit plan,

---

8. Carte Blanche has never filed an answer to plaintiff's complaint or amended complaint. Accordingly, only the allegations of the plaintiff's complaint, as amended, are before us. The "factual" examples found in the text and footnotes were developed at oral argument.

9. With respect to this contention, Carte Blanche asserted that if the allegations of the complaint alleged a claim for relief, such claim for relief arose under the Federal Trade Commission Act, 15 U.S.C. § 45, the enforcement of which is exclusively vested in the Federal Trade Commission. *See* Moore v. N. Y. Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926). Given the nature and basis for our disposition of the instant case, we do not at this time reach the issue raised: that conduct constituting violation of the FTC Act cannot constitute a basis for private claims for relief under the Truth in Lending Act.

10. *See* Katz v. Carte Blanche Corp., 53 F.R.D. 539 (W.D.Pa.1971), rev'd, 496 F.2d 747 (3d Cir.) (en banc), cert. denied, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974).

11. Plaintiff's original complaint alleged that Carte Blanche's improper disclosure practices resulted in an overcharge to Zeltzer of $11.21. The amended complaint, however, stated that Zeltzer had suffered no actual monetary loss and therefore limited his claim for relief to statutory penalty, attorney's fees and costs. 15 U.S.C § 1640(a).

12. By granting summary judgment on the merits to Carte Blanche on the ground that plaintiff's allegations failed to state a cause of action under the Truth in Lending Act, the district court did not pass upon plaintiff's motion for class determination. Also by reason of its disposition, the district court did not consider the other grounds for dismissal urged in Carte Blanche's Rule 12 motion.

the creditor shall disclose to the person to whom credit is to be extended each of the following items, to the extent applicable:

\* \* \* \* \* \*

(2) The method of determining the balance upon which a finance charge will be imposed.

\* \* \* \* \* \*

Statement required with each billing cycle

(b) The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth each of the following items to the extent applicable:

\* \* \* \* \* \*

(8) The balance on which the finance charge was computed and a statement of how the balance was determined. If the balance is determined without first deducting all credits during the period, that fact and the amount of such payments shall also be disclosed.

\* \* \* \* \* \*

15 U.S.C. § 1637. Section 105 of the Act (15 U.S.C. § 1604) delegates to the Federal Reserve Board broad regulatory and rulemaking powers to effectuate its purposes. *See* Mourning v. Family Publications Service, Inc., 411 U.S. 356, 364, 93

S.Ct. 1652, 36 L.Ed.2d 318 (1973); Bone v. Hibernia Bank, 493 F.2d 135, 138 (9th Cir. 1974). Pursuant to the broad powers granted it, the Federal Reserve Board promulgated Regulation Z. The specific disclosures required by Regulation Z, and alleged to have been violated by Carte Blanche, are disclosures to be made on opening a new account,[13] and disclosures to be made by periodic statements after an account has been opened.[14]

Referring to the literal words of Regulation Z the district court speculated "that plaintiff, under this state of facts, [might have] stated a cause of action . . . ." 375 F.Supp. at 720. However, interpreting Regulation Z in accordance with an interpretive ruling of the Federal Reserve Board, the district court held that a cause of action was not so stated. *Cf.* Mourning v. Family Publications Service, Inc., 411 U.S. at 372, 93 S.Ct. 1652; Udall v. Tallman, 380 U.S. 1, 16–17 (1965); Bone v. Hibernia Bank, 493 F.2d at 139–40. The district court reached its conclusion without regard to whether disclosure was required under the Act. In so doing, the district court bypassed the question of whether disclosure was mandated and proceeded directly to hold that Carte Blanche's practice would nevertheless be exempt from disclosure. As a result of this approach, we first deal with the issue of "exemption" under the interpretive ruling and then consider if disclosure is mandated.

For its holding, the district court emphasized, and apparently relied upon,

13. Regulation Z in part provides:
(a) *Opening new account.* Before the first transaction is made on any open end credit account, the creditor shall disclose to the customer in a single written statement, which the customer may retain, in terminology consistent with the requirements of paragraph (b) of this section, each of the following items, to the extent applicable:
\* \* \* \* \* \*
(2) The method of determining the balance upon which a finance charge may be imposed.
12 C.F.R. § 226.7(a)(2).

14. Regulation Z requires a creditor to provide a periodic statement for each billing cycle to a cardholder who has an outstanding account balance of more than $1.00. The periodic statement, in part, must set forth:
(8) The balance on which the finance charge was computed, and a statement of how that balance was determined. If any balance is determined without first deducting all credits during the billing cycle, that fact and the amount of such credits shall also be disclosed.
12 C.F.R. § 226.7(b)(8).

just one sentence of the interpretive ruling:[15]

(b) In disclosing the method of determining the balance(s) upon which finance charges are computed, it is not necessary to show the method of allocating payments or other credits.

12 C.F.R. § 226.706(b). Our analysis of the entire subsection (b) however, discloses that the interpretive ruling cannot support the district court's conclusion.

First, when read in full context, subsection (b) limits drastically the scope of the introductory sentence which was central to the district court's opinion. Subsection (b), through example, narrowly limits the types of charges ("late charges," "overdue balances," "insurance premiums," etc.) to which payments may be applied without the necessity for disclosure. In this context, the ruling only exempts (by interpretation) a creditor from having to disclose the mechanics involved in allocating credits to those "internal" charges which, in aggregate, constitute the balance in an *open end credit plan*. It is evident from the full text of the interpretive ruling[16] that the ruling applies only where payments are allocated among *charges;* it does not ap-

ply where, as here, payments are allocated between *accounts.*

Second, subsection (b) by its express terms, as well as by its title,[17] applies solely to open end credit plans. It has no relation or application to payments or credits made with respect to an account which is "other than an open end credit plan." As we have discussed earlier, an open end credit plan is distinguished from others in that such a plan is subject to finance charges; *e. g.,* Carte Blanche's airline account. Therefore, as Carte Blanche's *general account* is not subject to finance charges, it is an "other than open end credit plan" and is accordingly beyond the reach of subsection (b).

Finally, subsection (b) is directed solely to the allocation of monies *within* an account. It does not encompass the threshold allocation of monies between two distinct accounts. To the extent that subsection (b) comes into play, it does so only *after* an initial division of monies has been made as between, in this instance, the airline and general accounts. It is only the "internal" allocation of monies, as distinct from the initial division of monies, which need not be disclosed.

---

15. Although the parties have devoted considerable discussion to the issue of the authority of the agency's ruling and the extent to which it should control the disposition of this appeal, we do not reach that question. In our view, the interpretive ruling, 12 C.F.R. § 226.706, does not extend to the facts presented here.

16. The interpretive ruling, 12 C.F.R. § 226.706, provides:

(a) Section 226.7(a)(2) provides that before the first transaction is made on any open end credit account, the creditor must disclose "the method of determining the balance upon which a finance charge may be imposed." Section 226.7(b)(8) requires the creditor to disclose on the periodic statement "the balance on which the finance charge was computed, and a statement of how that balance was determined." The question is raised whether these provisions require a creditor to provide a description of the manner in which payments or other credits are applied to various portions of the balance or balances on which finance charges are computed.

(b) In disclosing the method of determining the balance(s) upon which finance charges are computed, it is not necessary to show the method of allocating payments or other credits. For example, explanation of the manner in which payments or credits may be applied to late charges, overdue balances, finance charges, insurance premiums, or other portions of balances is not required. Similarly, explanation of the method of allocating such payments between cash advance and purchase portions of the account is not required. Such explanations in many cases involve lengthy and complex descriptions which may unduly complicate disclosures.

(c) Explanation of the allocation method may be made by creditors where it can be done in conformity with § 226.6(c) which authorizes additional information or explanations as long as they are not stated, utilized, or placed so as to mislead or confuse the customer or contradict, obscure, or detract attention from the required disclosures.

17. The interpretive ruling is entitled: *"Open End Credit—allocation of payments"* (emphasis added).

■ Therefore, no matter how broadly the interpretive ruling may be read, it cannot exempt Carte Blanche from disclosing its division of monies between two separate accounts: one, an open end credit plan on which finance charges are imposed; and the other a general account not subject to such charges. It is this very Carte Blanche practice which is at issue here, for when Carte Blanche receives payments from a cardholder without instructions, *see* p. 1158 & note 5, *supra,* it unilaterally allocates the payment between the cardholder's airline and general accounts. *See* examples at p. 1159 & n.7, *supra.*

Having determined, contrary to the district court's holding, that the interpretive ruling does not exempt Carte Blanche from disclosure of its allocation practice, we now consider whether such a disclosure, if not so exempted, is required by the Truth in Lending Act. For that determination, we turn to the statute. *See* Philbeck v. Timmers Chevrolet, Inc., 499 F.2d 971 (5th Cir. 1974).

### III.

It is the declared congressional purpose of the Truth in Lending Act to assure consumers a meaningful disclosure of credit provisions, thus enabling the consumer to compare more readily various available credit terms and to avoid the uninformed use of credit. 15 U.S.C. § 1601;[18] *see* Mourning v. Family Publications Service, Inc., 411 U.S. at 364, 93 S.Ct. 1652. The language of the Truth in Lending Act requires the creditor of a consumer open end credit plan to disclose the method by which a balance is determined both before the opening of an account and by a periodic statement once the account has been opened. 15 U.S.C. § 1637(a)(2), (b)(8). Similar disclosure requirements are imposed by the implementing language of Regulation Z. *See* 12 C.F.R. § 226.-7(a)(2), (b)(8).

Under Carte Blanche's system of allocation, undisclosed to its cardholders, it is not until the succeeding billing cycle that a cardholder would discover that an airline account overpayment would not be applied to reduce the airline account balance. This we believe is in direct contravention of the express language of the Act which, as noted, requires disclosure of "the method of determining the balance upon which a finance charge will be imposed." 15 U.S.C. § 1637(a)(2).

The language here quoted is found in that section of the Act pertaining to disclosure before the opening of an account. A corresponding disclosure requirement is imposed upon a creditor once an account has been opened. 15 U.S.C. § 1637(b)(8). Although the language of (b)(8) is more detailed than that of (a)(2), this difference results only because (b)(8) contemplates the disclosure of transactions which can only occur *after* an account has been opened. Thus, (b)(8) in full requires a statement setting forth:

(8) The balance on which the finance charge was computed and a statement of how the balance was determined. *If the balance is determined without first deducting all credits during the period, that fact and the amount of such payments shall also be disclosed.*[19]

---

**18.** 15 U.S.C. § 1601 provides:

*Congressional findings and declaration of purpose*

The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.

**19.** The underscored portion of the statute was not in the original version of the bill, but appeared as an amendment sponsored by the Senate Subcommittee on Financial Institutions of the Senate Committee on Banking and Currency. 113 Cong.Rec. 14693 (1967). The amendment was designed to require disclosure of how balances were determined, since more than one method of computing the base to which finance charges would be applied was known to exist. This amendment was in accordance with the recommendations made by

15 U.S.C. § 1637(b)(8); *see* Regulation Z, 12 C.F.R. § 226.7(b)(8).

 Here, under Carte Blanche's procedure, airline account balances were computed "without first deducting all credits during the period." Under such a practice, a cardholder would be uninformed as to whether monthly payments would or would not be allocated by Carte Blanche as "credits" to the cardholder's airline account. The legislative history indicates to us that the crucial objective of the Act was to insure that consumers be afforded access to information so that they could compare the cost of credit. *See* 1968 U.S.Code Cong. & Admin.News at 1970–71. In our view, an informed comparison of credit costs, as well as an informed determination of credit use, cannot be made where a creditor does not disclose information concerning the manner in which payments are applied to reduce an outstanding credit balance. It is not realistic to expect that a consumer will be able to make an informed credit decision where, as here, the creditor fails to reveal that payments received will be divided between accounts subject to finance charges and accounts not subject to finance charges.[20] In the context of Truth in Lending disclosures, we cannot conceive of anything more fundamental than the furnishing of this type of credit information to a credit consumer.

 Even if the statutory language of the Act were less explicit, and even if the announced congressional purpose were less clearly defined, we nonetheless would be obliged by sheer logic to hold that Carte Blanche's allocation practices are within the scope of the Act's required disclosure provisions.[21] However, in resolving the issue presented here, we are not obliged to consider an ambiguous statute or an ill-defined congressional purpose. The statutory language before us is explicit and the congressional objective clear. In our view disclosure is required.

### IV.

Inasmuch as we hold that plaintiff's allegations state facts under which Carte Blanche was required to disclose the manner of its allocation of payments between accounts, the complaint suffices to state a cause of action arising under the Truth in Lending Act. Accordingly, Carte Blanche's motion to dismiss the complaint should not have been granted.

The other grounds for dismissal urged by Carte Blanche in its motion to dismiss (*see* pp. 1159, 1160 *supra*) were not ruled upon by the district court in light of its disposition (now held erroneous) of this motion. Hence, on remand those grounds, if renewed, should be considered together with any other issues that may be raised by the parties. We express no opinion as to the disposition of the other issues raised in defendant's motion, none of which were ruled upon by the district court.

We will reverse the order of April 30, 1974 which dismissed the complaint and remand to the district court for further proceedings consistent with this opinion.

Mr. J. L. Robertson, Vice Chairman of the Governors of the Federal Reserve System. *See* 113 Cong.Rec. 14693–5 (1967). Governor Robertson had testified that "more than one method is commonly used for computing the base to which the finance rate will be applied," and that the disclosure required should include "the method of computing the balance against which the charge is imposed . . . .." Senate Hearings on S.5 before the Subcommittee on Financial Institutions of the Senate Committee on Banking and Currency, 90th Cong., 1st Sess., 662 (1967).

**20.** Under the examples posed *supra* at 1159, by operation of the former Carte Blanche system, the consumer would be deprived of the present value of $300 or $500. Such unwitting forfeiture of the potential to use credit or to earn interest is exactly the type of evil Congress sought to obviate.

**21.** The statutory terms, being remedial in nature, are to be liberally construed. *See* N. C. Freed Co., Inc. v. Board of Governors, 473 F.2d 1210 (2d Cir. 1973), cert. denied, 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1974).