Jay S. ZELTZER, on behalf of himself
and all others similarly
situated, Plaintiff,

v.

CARTE BLANCHE CORPORATION,
Defendant.

Civ. A. No. 71–822.

United States District Court,
W. D. Pennsylvania.

Sept. 9, 1977.

See also, D.C., 414 F.Supp. 1221.

Mark A. Senick, Pittsburgh, Pa., for
plaintiff.

John H. Morgan, Howard D. Schwartz, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for defendant.

## OPINION

TEITELBAUM, District Judge.

■ This protracted litigation under the Federal Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.,* is presently before the Court on two motions filed by named plaintiff Jay Zeltzer: (1) a motion to amend plaintiff's motion for class action determination so as to limit the purported plaintiff class to persons residing within the Western District of Pennsylvania; and, (2) a motion for class action determination under Rule 23 of the Federal Rules of Civil Procedure.[1]

We have written on this difficult case often and at some length.[2] The factual and historical pattern of the litigation is familiar to all concerned, and need not be reiterated in great detail on this occasion. The brief discussion which follows provides sufficient background to enable an understanding of the Court's treatment of the matters now *sub judice.*

## BACKGROUND

This purported class action was brought by the named plaintiff as one of defendant's cardholders. Defendant Carte Blanche Corporation ("Carte Blanche") is a national and international travel and entertainment credit card company which offers its cardholders the privilege of charging items at member establishments. All but

one type of such charge privileges are billed, and payment is required, on a 30-day billing cycle. The one type of charge which a cardholder may elect to defer and pay in installments is the purchase of airline tickets. If a deferred payment plan is elected by a cardholder when purchasing airline tickets, the cardholder is billed in monthly installments, the amount of which varies with the total amount of the purchase price. A finance charge is added to the monthly installments billed under the deferred payment plan for airline ticket purchases. If a cardholder's purchase of such tickets is for a consumer purpose—as distinguished from a business or commercial purpose—the transaction is treated by defendant as an open-end credit purchase under the Truth-in-Lending Act.[3]

Under Carte Blanche's computerized billing system, each airline ticket purchase on the extended payment plan is treated monthly as an individual transaction at a member business establishment; a separate periodic statement for each monthly installment is included with the cardholder's monthly statement and the amount of each such installment is added to the amount of all other charges, if any, made by the cardholder at member establishments. Each month, the amount of the computed monthly installment is deducted from the balance owing on any extended payment plan for an airline ticket purchase, apparently whether or not payment of that installment is made by the cardholder; if payments become delinquent, defendant resorts to its

---

1. Also pending is plaintiff's motion for summary judgment against Carte Blanche. Plaintiff has briefed the merits of that motion; defendant has briefed only its position that the motion is not ripe for determination until after a decision on the class certification question—a position to which I adhere and which plaintiff does not appear to challenge in the absence of an express waiver by defendant of its right to enjoyment of the benefits of mutuality of estoppel and to protection against "one-way intervention." See *Katz v. Carte Blanche Corp.,* 496 F.2d 747 (3d Cir.), *cert. denied* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); see also *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), as well as a series of decisions by the Court of Appeals for the Seventh Circuit interpreting that case:

*Roberts v. American Airlines, Inc.,* 526 F.2d 757 (1975); *Peritz v. Liberty Loan Corp.,* 523 F.2d 349 (1975); *Jimenez v. Weinberger,* 523 F.2d 689 (1975); *Case & Co., Inc. v. Board of Trade of Chicago,* 523 F.2d 355 (1975).

Defendant will be afforded an opportunity to brief the merits of plaintiff's motion for summary judgment prior to any decision on that matter.

2. See, *e. g.,* the opinions reported at 375 F.Supp. 717 (1974) and 414 F.Supp. 1221 (1976). See also the decision of the Court of Appeals for the Third Circuit reported at 514 F.2d 1156 (1975).

3. See 15 U.S.C. § 1637.

program for notification of cardholders of delinquent payments, imposition of late charges and eventual cancellation of delinquent accounts.

During the period in issue in this case (January 1, 1970 to November 1, 1970), if a Carte Blanche cardholder made a payment to defendant in excess of the amount of the monthly installment due on account of an airline ticket purchase on an extended payment plan, that excess payment was credited to the cardholder's general account rather than to his or her extended payment account.[4] It appears that Carte Blanche has since changed its overpayment allocation procedure; at present (and since May, 1971, when a consent decree was entered into between Carte Blanche and the Federal Trade Commission), overpayments of installments under any extended payment plan for airline tickets are applied to the balance of the cardholder's extended payment (i. e., airline) account unless the cardholder specifically instructs defendant to the contrary.

On August 30, 1971, on behalf of himself and all others similarly situated, Zeltzer filed this action against defendant, alleging that Carte Blanche violated the Truth-in-Lending Act during the period from January 1, 1970 to November 1, 1970 by failing to properly disclose its practice in applying or allocating overpayments made by a cardholder who had purchased an airline ticket under an extended payment plan. Specifically, plaintiff alleged that by failing to disclose the manner in which such overpayments would be credited, defendant violated Section 1637(a)(2), (b)(8) and (b)(9) of the Truth-in-Lending Act and Section 226.-7(a)(2), (b)(8) and (b)(9) of Regulation Z (12 C.F.R. § 226.1 et seq.).

By agreement of the parties and the Court, a long hiatus occurred in these proceedings pending the decision of the Court of Appeals for the Third Circuit in the related case of *Katz v. Carte Blanche Corp.,* 496 F.2d 747, *cert. denied* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). Following that decision, this Court heard and decided a variety of rather complex preliminary motions. These determinations resulted in bringing the case to its present posture.

## PLAINTIFF'S MOTION TO LIMIT THE PURPORTED CLASS TO THOSE RESIDING WITHIN THE WESTERN DISTRICT OF PENNSYLVANIA

Named plaintiff's motion for class action determination seeks certification under F.R. Civ.P. 23 of the plaintiff class:

". . . to include all cardholders of Defendant who during the period January 1, 1970 to November 1, 1970, received one or more periodic billing statements regarding an outstanding balance for airline tickets purchased on Defendant's extended pay plan, and who are 'consumers' as defined by the Truth in Lending Act, 15 U.S.C. 1602(h)."

Since the class determination motion was filed, plaintiff has moved for leave to amend the same by adding the following limitation at the end of the language quoted immediately above:

"and who resided in one or more of the counties comprising the Western District of Pennsylvania as set forth in 28 U.S.C. 118 between January 1, 1970, and September 2, 1971."

Defendant vigorously opposes such amendment of the motion for class certification, arguing in essence that plaintiff's requested limitation on the size or geographic scope of the class contravenes the Congressional intent expressed in the 1974 amendment to Section 1640(a)(2)(B) of the Truth-in-Lending Act and would be severely prejudicial to Carte Blanche. It is apparently defendant's position that the 1974 amendment to 15 U.S.C. § 1640(a)(2)(B)—which limits the potential liability of a creditor in the case of a class action to a maxi-

---

**4.** See Judge Garth's comprehensive explanation of this procedure at 514 F.2d *supra* at 1158–1159.

mum of the lesser of $100,000 [5] or 1% of its net worth—compels a plaintiff class (if any), of nation-wide scope. Otherwise, defendant submits, defendant-creditors such as Carte Blanche would be exposed to the possibility of multiple class actions, brought in separate judicial districts, for the same alleged Truth-in-Lending violation; and so long as no judicial district awarded more than the statutory maximum in a particular class action, multiple recoveries would be permissible, with total damages potentially in excess of the limitations set forth in the amended law. This, defendant asserts, would operate to subvert the intent of Congress in amending Section 1640(a)(2)(B) —to prescribe a nation-wide maximum limit on a creditor's liability for any given violation of the Truth-in-Lending Act.

I cannot agree. In this regard, while there is no indication here that Carte Blanche is in fact subject to pending class litigation in other districts based upon the same violations alleged in this case, we assume for present purposes the correctness of defendant's assertion that such suits are not necessarily precluded by operation of the applicable one-year statute of limitations, see *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), and, further, that plaintiff's suggestion that Carte Blanche could move to consolidate any subsequently filed class actions affords little solace in the face of the possibility that such actions might be filed subsequent to any award this Court might enter on behalf of a class limited in the manner plaintiff suggests. Nonetheless, defendant's argument is not sufficiently persuasive to warrant denial of the requested class limitation amendment.

First and foremost, we are unable to discern anything in the legislation in question indicative of a Congressional intent to limit liability *for a given violation* by a defend-

ant-creditor. Rather, the language of the amendments to Section 1640(a)(2)(B), quoted *supra,* appears to manifest an intent to set a maximum limit of liability only for each particular *class action,* as opposed to any given violation. While it may well be true that, as a matter of policy, the damage limitation in question should have been made applicable to a particular violation itself, it requires an unacceptably strained reading of the statute in question to assign persuasive merit to the interpretation proffered by Carte Blanche.

Moreover, the effect of judicial acceptance of defendant's argument that Section 1640(a)(2)(B) prescribes a nation-wide maximum penalty per violation would be to compel certification of a class of national scope, if any, each time a class action is brought under the Act against a creditor doing business on a nation-wide basis. Given this Court's present conviction that few, if any, such actions could be deemed manageable under Rule 23(b)(3) criteria, the ultimate result of acceptance of defendant's argument would be to obviate all use of the class action device in suits against national creditors under the Truth-in-Lending Act. The prospect of such a result reinforces the Court's view that, on its face, Section 1640(a)(2)(B) sets a maximum penalty only for a particular class action, and not for a given violation of the Act.

Plaintiff's motion to amend his motion for class certification so as to limit the size of the purported class to those potential members residing within the territorial limits of this Court will be granted.

## THE MOTION FOR CLASS ACTION DETERMINATION

We have noted that named plaintiff's motion for class determination, as amended, requests certification of a plaintiff class comprised of all Carte Blanche cardholders

---

**5.** While the parties argue the class scope issue with reference to the 1974 amendment to the Act, it is to be noted that in 1976, Section 1640(a)(2)(B) was again amended so as to substitute a figure of "$500,000" for "$100,000" as the maximum creditor liability, effective in March, 1977. Section 1640(a)(2)(B) now pro-

vides as follows: "(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery in such action shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor;"

who resided within the Western District of Pennsylvania between January 1, 1970 and September 2, 1971, and who, during the period January 1, 1970 to November 1, 1970, received a monthly billing statement regarding an outstanding balance for airline tickets purchased for "consumer purposes" on defendant's extended pay plan. It is plaintiff's contention that certification of this delineated class is appropriate under Rule 23(a) and (b)(3) criteria.[6] I do not agree.

■ I do not think it necessary on this occasion to consider the familiar Rule 23(a) prerequisites to class treatment. Suffice it to say that those prerequisites—numerosity, commonality, typicality and adequate protection of class interests—appear to be satisfied in this case. We focus instead on the additional certification requirements contained in 23(b)(3)—predominance and superiority. In my view, these related requirements are preclusive of the class action determination sought by plaintiff Zeltzer.

In *Katz v. Carte Blanche Co.,* 496 F.2d 747, *cert. denied* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974), a case similar and closely related to the action now *sub judice,* the Court of Appeals for the Third Circuit held that in order to establish this same defendant's liability under Section 1640(a) of the Truth-in-Lending Act, a cardholder must show:

> "(1) that a given charge was a finance charge within the meaning of TILA; (2) that the disclosure with respect to that charge was not in compliance with the applicable TILA regulations; and (3) *that*

*the charge was imposed in connection with a consumer credit transaction, not a business transaction.* The first two showings focus on the uniform conduct of Carte Blanche. *The third showing focuses on the separate conduct, and possibly the subjective intention, of each Carte Blanche member."* 496 F.2d at 751 (Emphasis added).

The Court in *Katz* stated clearly that Carte Blanche was entitled to proof as to whether each potential class member was a consumer rather than a commercial or business card user. 496 F.2d at 762. That entitlement persists and fully obtains in the present case. What would be required here is examination of and individual determinations regarding the separate conduct and intent of each otherwise implicated Carte Blanche cardholder. In such circumstances, where a critical question of fact is wholly individual—i. e., a business or a consumer use of defendant's airline charge plan—I do not think it can be said that class-common questions of law or fact predominate over individual questions requiring individual determinations as to each class member. Obviously, as plaintiff urges, there exist legal and factual questions common to the asserted class—no doubt the commonality prerequisite embodied in 23(a)(2) is met in this case. What is lacking here is that "predominant commonality" required by 23(b)(3).

The Court has discussed on other similar occasions the dependent aspect of the relationship between the 23(b)(3) class action requirements, predominance and superiority. See *Gelman v. Westinghouse Electric*

---

**6.** The criteria in question are set forth in F.R. Civ.P. 23, which provides in pertinent part as follows: "a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

  *   *   *   *   *   *

"(B)(3) the court finds that the questions of law or fact common to the members of the class

predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

*Corp.,* 73 F.R.D. 60 (W.D.Pa.1976). In *Gelman, supra* at 68–69, I noted that, in my view, a class action necessarily cannot be deemed the superior method of adjudication in the absence of predominant common questions. Where class-common issues do not predominate over individual questions, class litigation of any significant size is likely to ". . . disintegrate into a myriad of individualized claims, destroying the cohesiveness of the litigation and rendering it entirely unmanageable. Rule 23(b)(3)(D)." *Gelman, supra* at 69.

I of course recognize that plaintiff's limiting amendment of his Rule 23 motion greatly reduces the truly awesome manageability problems that would confront a district court dealing with a nation-wide plaintiff class. See *Katz, supra* at 762–763. But I do not consider that plaintiff's limitation of the size of the cardholder class he seeks to represent is sufficient to render manageable a class action involving hundreds and perhaps thousands of potential class members whose purposes in using defendant's credit card to extend payment of airline ticket purchases during the relevant period would have to be determined on an individual basis. Given this necessity of individualized determination of a critical, wholly-individual factual question, I find that this litigation would not be manageable as a class action and that class treatment is therefore not the superior method of adjudicating the controversy. In my judgment, this result logically and pragmatically follows from our earlier determination that common questions do not predominate. On this fundamental basis, plaintiff's motion for class action determination will be denied.[7]

---

7.  See *Berkman v. Sinclair Oil Corp.,* 59 F.R.D. 602 (N.D.Ill.1973). *Cf. Ungar v. Dunkin' Do-*

*nuts of America, Inc.,* 531 F.2d 1211 (3d Cir. 1976).