In re John W. CASSELLI and Lynn M. Casselli, Bankrupts.

McMAHAN'S OF ALHAMBRA, a partnership, Plaintiff,

v.

John W. CASSELLI and Lynn M. Casselli, Defendants.

Bankruptcy Nos. 79–05746–JD (A), 79–05747–JD.

United States Bankruptcy Court, C. D. California.

May 29, 1980.

John W. Casselli and Lynn M. Casselli, in pro. per.

Stanley Silberman, Frandzel & Share, Beverly Hills, Cal., for plaintiff.

## OPINION

JAMES R. DOOLEY, Bankruptcy Judge.

This case presents two interrelated questions:

1. To what extent does plaintiff hold a security interest in the items that defendants purchased from plaintiff?

2. To what extent is plaintiff entitled to a return of the items that defendants purchased, or a nondischargeable judgment for their value?

## FACTS

On or about March 27, 1977 plaintiff entered into a Revolving Charge Account Agreement with defendant Lynn M. Casselli. Later, on or about September 13, 1977 plaintiff entered into another Revolving Charge Account Agreement with defendant Lynn M. Casselli. The two agreements are substantially identical except for the dates appearing thereon and the phone number of the defendant Lynn M. Casselli[1]. Each agreement provides in part as follows:

1. Defendant Lynn M. Casselli signed both agreements under the name of Lynn M. Gidick, her maiden name.

"Title to each article purchased under this, previous, and subsequent contracts, shall remain in Seller until the price of each such article is paid in full. . .".

Thereafter, defendants made the following purchases pursuant to the agreements referred to above:

| Date | Item | Purchase Price Or Amount |
|------|------|-------------------------|
| 3–27–77 | Sofa | $ 399.00 |
| | Chair | 199.00 |
| | Sales Tax | 35.88 |
| | Sub-total for 3–27–77 | $ 633.88 |
| 9–6–77 | Ottoman | $ 89.00 |
| | Sales Tax | 5.34 |
| | Sub-total for 9–6–77 | $ 94.34 |
| 9–13–77 | Dresser Base | $ 399.95 |
| | Hutch Mirror | 169.95 |
| | Nite Stands | 269.90 |
| | Bed | 239.95 |
| | Chest | 349.95 |
| | Queen Mattress | 155.00 |
| | Queen Box | 144.00 |
| | Sales Tax | 103.72 |
| | Sub-total for 9–13–77 | $1,832.42 |
| 10–4–78 | 19″ Color TV | $ 449.00 |
| | Sales Tax | 26.94 |
| | Sub-total for 10–4–78 | $ 475.94 |
| 1–6–79 | 12″ Black & White TV | $ 99.00 |
| | Sales tax | 5.94 |
| | Sub-total for 1–6–79 | $ 104.94 |
| 2–4–79 | Mattress | $ 59.00 |
| | Box | 59.00 |
| | Frame | 24.95 |
| | Sales Tax | 8.58 |
| | Sub-total for 2–4–79 | $ 151.53 |

The purchases itemized above total $3,293.39, including sales taxes[2]. The sales slips relating to the purchases made on March 27, 1977 and September 6, 1977 show that defendants' monthly payment was $38.00; however, the sales slip for the purchase on September 13, 1977 and all sales slips thereafter show that defendants' monthly payment was $109.00. During the period from March 28, 1977 to March 13, 1979 the defendants paid to plaintiff[2] the total sum of $2,946.72.

On May 30, 1979 defendants filed a voluntary petition in bankruptcy; and on August 7, 1979 plaintiff commenced the present adversary proceeding by filing a "Complaint For Reclamation Of Personal Property And For Turnover Order; Or, In The Alternative, Complaint For Determination Of Non-Dischargeability".

## EXTENT OF PLAINTIFF'S SECURITY INTEREST

Plaintiff claims a security interest in all of the items purchased by defendants as itemized above. The defendants, on the other hand, contend that they have paid for all items except those purchased on October 4, 1978, January 6, 1979, and February 4, 1979; and that plaintiff has no security interest in any other items.

Plaintiff relies upon Section 1810.6 of the California Civil Code[3] which provides as follows:

"§ 1810.6 Retention by seller of security interest in goods; allocation of payments

Nothing in this article prohibits the execution of an agreement between a buyer and seller whereby the seller retains a security interest in goods sold to the buyer until full payment therefor has been made. *Each payment received under such an agreement shall be deemed to be allocated to all the various purchases in the same proportion or ratio as the cash sale prices bear to one another. However, any downpayment on a specific purchase shall be deemed to be allocated in its entirety to such purchase.*" (Emphasis added).

2. Exhibit 10 indicates that on September 7, 1978 defendants made a purchase totalling $423.88, which was returned for credit on October 5, 1978. This $423.88 has not been included in the above tabulation, nor has the credit given for $423.88 on October 5, 1978 been considered in computing the total payments made by defendants.

3. Section 1810.6 of the California Civil Code is a part of the Unruh Act which was adopted by the California legislature in 1959 to protect the consumer from abusive credit practices. See "The Unruh Act: A Legislative History", 4 U.C. Davis Law Review 1; 13 Cal.Jur.2d Consumer and Borrower Protection Laws § 81.

Section 1810.6 of the California Civil Code is generally applicable to retail installment accounts[4]. However, it is the view of this court that the allocation provisions contained in Section 1810.6 should not be applied in this case because these provisions were not disclosed as required by applicable provisions of both the Truth in Lending Act [15 U.S.C. § 1637(a)(7)] and the Unruh Act [§ 1810.1(f) of the California Civil Code]. 15 U.S.C. § 1637(a) provides in part as follows:

"§ 1637. Open end consumer credit plans—Required disclosures by creditor

(a) Before opening any account under an open end consumer credit plan, the creditor shall disclose to the person to whom credit is to be extended each of the following items, to the extent applicable:

\* \* \* \* \* \*

(7) The conditions under which the creditor may retain or acquire any security interest in any property to secure the payment of any credit extended under the plan, and a description of the interest or interests which may be so retained or acquired."

And Section 1810.1 of the California Civil Code provides in part:

"§ 1810.1. Written statement by creditor; contents

Notwithstanding any other provisions of this article to the contrary, before the first transaction is made on any retail installment account, the seller shall disclose to the buyer in a single written statement, which the buyer may retain, in terminology consistent with the requirements of Section 1810.3, each of the following items, to the extent applicable:

\* \* \* \* \* \*

(f) The conditions under which the creditor may retain or acquire any security interest in any property to secure the payment of any credit extended on the account, and a description or identification of the type of the interest or interests which may be so retained or acquired."

 The purpose of the Truth in Lending Act is to assure consumers a meaningful disclosure of credit provisions, thus enabling the consumer to compare more readily various credit terms and to avoid the uninformed use of credit. See 15 U.S.C. § 1601; *Zeltzer v. Carte Blanche Corporation,* 514 F.2d 1156, 1164 (3d Cir. 1975); *Willis v. American National Stores,* 350 F.Supp. 173, 175–176 (N.D.Ga.1972); "Consumer Credit Sale Disclosure in California", 4 U.C. Davis Law Review 123, 128. And the Truth in Lending Act, being remedial in nature, is to be liberally construed in favor of the consumer. *Zeltzer v. Carte Blanche Corporation, supra,* at page 1164, footnote 21; *Eby v. Reb Realty, Inc.,* 495 F.2d 646, 650 (9th Cir. 1974); *N. C. Freed Company, Inc. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973) *cert. denied* 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61.

The application of the allocation provisions of Section 1810.6 to the present case would sanction a violation of both the letter and spirit of the Truth in Lending Act. Cf. *Matter of Garner,* 556 F.2d 772 (5th Cir. 1977). The defendants have paid to plaintiff a total of $2,946.72; yet under Section 1810.6 plaintiff would still retain a security interest in all of the items which defendants purchased. Cf. *William v. Walker-Thomas Furniture Company,* 350 F.2d 445 (D.C.Cir. 1965). There is nothing in the Revolving Charge Account Agreement which suggests such a startling result. Had plaintiff's

---

**4.** The Unruh Act distinguishes between retail installment contracts and retail installment accounts, defining and regulating each in a different manner. See *Barquis v. Merchants Collection Assn.* (1972), 7 Cal.3d 94, 123–124, 101 Cal.Rptr. 745, 496 P.2d 817; *Seibert v. Sears, Roebuck & Co.* (1975), 45 Cal.App.3d 1, 6–8, 120 Cal.Rptr. 233; 13 Cal.Jur.3d Consumer and Borrower Protection Laws § 82 et seq. For the purpose of this Opinion the court will assume that the two agreements with defendant Lynn M. Casselli created a retail installment account; although defendants purchased substantial consumer durables which generally typify a retail installment contract. See *Barquis v. Merchants Collection Assn., supra,* at page 124, 101 Cal.Rptr. 745, 496 P.2d 817. Section 1810.1 et seq. of the California Civil Code regulates retail installment accounts.

method of allocation been disclosed to defendants, they could have compared plaintiff's credit terms with those offered by other furniture stores and made an informed choice. Moreover, even if defendants determined to purchase from plaintiff, they could have delayed subsequent purchases until they acquired full title to the earlier items purchased.

The fact that the method of allocation relied upon by plaintiff is prescribed by a California statute should not relieve plaintiff of its obligation of disclosure under the Truth in Lending Act. To hold otherwise would place upon consumers the burden of researching state statutes in order to determine credit terms, a result incompatible with the purpose of the Truth in Lending Act.

This court concludes that the allocation provisions of Section 1810.6 of the California Civil Code should not be applied in this case. Instead, the court will apply the "first-in, first-out" principle in allocating the payments which defendants made to plaintiff. Applying this principle, plaintiff has a security interest only in the Queen Mattress and the Queen Box purchased on September 13, 1977 and in all of the items purchased on October 4, 1978, January 6, 1979, and February 4, 1979.

### RELIEF TO WHICH PLAINTIFF IS ENTITLED

Defendant Lynn M. Casselli testified, *inter alia*, that she did not know that plaintiff had retained a security interest in any of the items purchased, since she did not read the Revolving Charge Account Agreement. However, a party is generally bound by provisions in an agreement that he signs even though he has not read them and is unaware of their existence. See *N. A. M. E. S. v. Singer* (1979), 90 Cal.App.3d 653, 153 Cal.Rptr. 472; *Oakland Bank of Commerce v. Washington* (1970), 6 Cal. App.3d 793, 86 Cal.Rptr. 276. The failure of defendant Lynn M. Casselli to read the Revolving Charge Account Agreement does not deprive plaintiff of its security.

Defendant Lynn M. Casselli also testified that she gave the 19″ Color TV that she purchased on October 4, 1978 to her father-in-law. While this defendant's failure to read the agreement does not deprive plaintiff of its security interest, it does prevent the gift to her father-in-law from constituting willful and malicious conversion within the meaning of former Section 17a(2) of the Bankruptcy Act. *Davis v. Aetna Acceptance Company*, 293 U.S. 328, 331–332, 55 S.Ct. 151, 152–153, 79 L.Ed. 393 (1934); See also *Bennett v. W. T. Grant Company*, 481 F.2d 664, 665 (4th Cir. 1973).

This court concludes that plaintiff is entitled to a return of all of the items in which it retains a security interest or to a non-dischargeable judgment for the fair market value of each item not returned. This fair market value should be determined as of August 7, 1979, the date plaintiff's complaint was filed. The court finds the fair market value of the items in which plaintiff retained a security interest to be as follows:

| Date Purchased | Item | Fair Market Value |
|---|---|---|
| 9–13–77 | Queen Mattress | $ 25.00 |
| " | Queen Box | 25.00 |
| 10–4–78 | 19″ Color TV | 175.00 |
| 1–6–79 | 12″ Black & White TV | 40.00 |
| 2–4–79 | Mattress | 20.00 |
| " | Box | 20.00 |
| " | Frame | 5.00 |

This Opinion contains findings of fact and conclusions of law as required by Bankruptcy Rule 752.